**Douglas GOLDMAN and Evelyn K. Goldman, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17560.**

United States Court of Appeals Sixth Circuit.

Dec. 21, 1967.

---

6. The burden of segregating innocent assets was concededly on taxpayer.

Jerome Goldman, Cincinatti, Ohio, for petitioners.

Albert J. Beveridge, III, Department of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Robert M. Willian, Attorneys, Department of Justice, Washington, D. C., on brief, for respondent.

Before PECK, McCREE and COMBS, Circuit Judges.

JOHN W. PECK, Circuit Judge.

In their income tax return for the calendar year 1961 petitioner· (the singular is used because although this was a joint return, the issues herein considered arise solely from the husband's activities) claimed two charitable deductions which were disallowed by the respondent. Subsequent to such disallowance relief was sought in the Tax Court, and this appeal is from an order favorable to the Commissioner of Internal Revenue.

The two alleged contributions (or, more accurately, the two categories of claimed contributions) are factually and in legal concept different from one another and will be herein separately treated. The first gift was of medical books and journals to the Good Samaritan Hospital of Cincinatti, Ohio, which is conceded by respondent to be a charitable organization under Section 170(c) of the Internal Revenue Code of 1954. The charitable contribution claimed in the return on account of the donated books and journals was in the sum of $1,500. As has been indicated, this claimed deduction was disallowed in full, but on review the Tax Court determined the fair value of the books to be $415.50 and directed the allowance of a deduction in that sum. The issue here presented is therefore not whether a deduction on this account is allowable, but rather the method of computation to be followed in determining the amount of the deduction.

The books constituting the gift in question were bound volumes of medical journals published between 1938 and 1960. There were 42 such volumes of the Archives of Internal Medicine, 34 volumes of the American Journal of Medical Sciences, 26 of the Archives of Neurology and Psychiatry, 24 of the American Heart Journal and 25 of the American Journal of Medicine. As the record shows, and indeed as is obvious from a review of the titles, these volumes constitute a commodity for which there is a very limited market. Perhaps for this reason, in the briefs, throughout the record of the trial in the Tax Court and in the opinion therein filed difficulty is encountered in determining what method of computation was being urged or followed. Section 170–1(c) (1) of the Treasury Regulations on Income Tax provides that if a deductible contribution "is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution." In the Opinion of the Tax Court it is stated that the only question in this regard is the "fair market value" of the volumes, but no suggestion as to how "fair market value" should be determined is offered. Petitioner frames the issue here to be whether such fair market value is that which an ultimate consumer would pay rather than that a dealer purchasing for the purpose of resale would pay.

Having properly stated that issue, however, petitioner goes on to argue that the Tax Court applied the wrong criterion, as evidenced by the fact that the fair market value of the books as testified to by respondent's sole witness was accepted by the Court, and as further evidenced by the fact that that witness stated on cross-examination that the prices to which he had testified were based upon what he, a bookstore proprietor, would have paid for the purpose of resale. However, respondent's witness gave his opinions immediately after the Court announced the correct rule ("Well, I don't mean the wholesale value where a man is buying it for resale. I mean a consumer sale."), the import of which was ostensibly acknowledged by this witness when he remarked, "A consumer sale." In these circumstances it cannot be held that the Court applied an improper standard regarding the fair market value of the books in question. It is further observed that a court speaks only through its orders (See United States v. Eisner, 329 F.2d 410 (6th Cir. 1964)) and that nothing in the Tax Court's findings of fact or conclusions of law indicate that an improper basis of computation was used in the determination of reasonable value. We hold that where a deductible charitable contribution is made in property other than money, the allowable deduction is the fair market value computed on the price an ultimate consumer would pay, and that what might be paid by a dealer buying to resell is not a proper consideration.

Counsel for both parties, in their briefs and oral presentations, initially recognize the issues to be questions of law, but then proceed to offer extended arguments on the weight of the evidence.

The record discloses that the petitioner himself and two expert witnesses presented by him tend to show a value of at least $10.00 a volume for the books in question, or $1,500 for the 151 books. The sole witness presented by the respondent expressed the opinion that they were worth a total of $415.50, and that is the precise "reasonable value" found by the Tax Court to be assignable to the books. The Tax Court Opinion makes a rather detailed review of the testimony of all of the witnesses, including a summary (supported by the transcript) of the qualifications of the experts. Petitioner's arguments in this area are not without persuasive elements, but we once again remind that our review is not for the purpose of arriving at an independent conclusion. We are limited to a determination as to whether the trier of fact made a clearly erroneous finding on the basis of the record (Rule 52(a), F.R. Civ.P.; Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Godfrey v. Commissioner of Internal Revenue, 335 F.2d 82 (6th Cir. 1964); Broughton v. Commissioner of Internal Revenue, 333 F.2d 492 (6th Cir. 1964)), and the petitioner here does not even contend that the finding under review is clearly erroneous. We do not find it to be.

The second category of alleged contributions which were disallowed as deductions by the respondent were made to organizations which issued receipts to him described in the record as being popularly called "raffle tickets." The issuing organizations and alleged contributions were as follows:

| Organization | Contribution |
|---|---|
| Good Samaritan Hospital | $ 50 |
| Jewish Community Center | 10 |
| Chofetz Chaim (Hebrew School) Bazaar | 10 |
| Cancer Aid | 1 |

Respondent conceded that the first two of these are charitable organizations within the meaning of Section 170(c) of the Internal Revenue Code of 1954, but stated that the status of the second two as such charitable organizations was in issue. This issue does not appear to have been resolved in the record. It was inferentially regarded by the Tax Court as immaterial, and will be so regarded here.

██ Petitioner testified that he received "receipts" for the payments listed above and that he was entitled to have such receipts represented in a blind draw from which he "conceivably" might have won something. Petitioner further testified that he would have received a prize if his number had been drawn in the lottery, but contended that in making the payments he did not intend to gamble on a risk, but intended to make a gift, characterizing his payments as "a regular donation that is made year after year, to these institutions," and as having been "strictly a gift." Petitioner argues that since this testimony was not rebutted the Tax Court was required to accept it. This position is clearly untenable since the trier of fact has always the duty to weigh the evidence presented and has the right to accept or reject such evidence. See Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 851, 35 L.Ed. 501 (1891); Sheppard v. Maxwell, 346 F.2d 707, 726 (6th Cir. 1965), rev'd on other grounds, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Hasson v. Commissioner of Internal Revenue, 239 F.2d 778 (6th Cir. 1956). "It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with [whether what is called a gift amounts to it in reality]." Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 286, 80 S.Ct. 1190, 1197, 4 L.Ed.2d 1218 (1960).

██ While none of the raffle tickets were received in evidence, it is apparent from the record and was conceded at argument that they are of the "dual purpose" type, constituting both evidence of receipt of the sum paid by the donor and of his ownership of a chance to win a prize. The record is further deficient in that no indication is given concerning the number or total value of the chances purchased (or of the donations received), nor of the nature or value of the prize.

The burden of establishing the value of the chances (or of the donations) was on the petitioner, and in the absence of evidence on this point the following argument which he presents is without meaning: "The odds of winning were infinitesimal. The amount of the payment far exceeded the actuarial value of the 'chance.'" It is possible to hypothesize a raffle ticket situation where the charitable nature of the gift would scarcely be debated, as where the purchase for $10.00 is one of one thousand chances and the prize a nosegay of violets. Examples at the other end of the spectrum are too obvious to justify statement, particularly where as here we are reviewing a finding by the trier of fact that "Petitioner was not a contributor to a charitable organization when he bought his raffle ticket. He was merely purchasing that which the charitable organization had to sell, namely, chances for a valuable prize. We are not told what the prizes are but it was stipulated that they were valuable prizes. * * * [Petitioner] received full consideration and he got just what he paid for. He was not making a charitable contribution within the meaning of the statute." As in the instance of the gifts in the first category, we affirm on the narrow ground that petitioner did not sustain his burden of establishing the value of the chances purchased (or of the donations) and in the absence of evidence on this point it cannot be determined that the finding of fact made by the Tax Court was clearly erroneous on the basis of the record. Commissioner of Internal Revenue v. Duberstein, supra; Godfrey v. Commissioner of Internal Revenue, supra.

One further contention of the petitioner merits comment. He argues that purchases of lottery tickets are analogous to the "bargain sales" where the taxpayer sells property to a charity for inadequate consideration. In such situation the difference between the sale price and the fair market value of the property sold is regarded by the Commissioner of Internal Revenue as a deductible charitable contribution. Treas.Reg. § 1.1001–1(e)

(1957). He argues that another similar recognition has been made by the Commissioner in the case of a taxpayer paying a price for an admission ticket greater than its true value (e. g., a $100 a plate ticket for a $5.00 dinner), where against the differential is deductible. Rev.Rul. 56–120, 1956–1 Cum.Bull. 514. While this argument is not theoretically unsound, the practical feasibility of allowing as a deduction the difference between the price paid for a raffle ticket and its cash value (computed by dividing the value of the prize by the number of chances issued) is questionable, and in any event is a computation not possible on the present record.

For the reasons hereinabove indicated, the judgment of the Tax Court is affirmed.