Roger I. Goodman and Connie S. Goodman v. Commissioner.
Goodman v. Commissioner
Docket No. 4756-69SC.
United States Tax Court
T.C. Memo 1970-122; 1970 Tax Ct. Memo LEXIS 238; 29 T.C.M. (CCH) 528; T.C.M. (RIA) 70122; May 21, 1970, Filed *238 Held, Petitioners' failure to prove that 700 pounds of suppositories, donated to a home for the aged, had any fair market value necessitates the disallowance of a deduction for a charitable contribution under sec. 170, I.R.C. 1954. Roger I. Goodman, pro se, 6605 S.E. 22 Ave., Portland, Ore.Joseph M. Wetzel, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The respondent determined deficiencies in the Federal income taxes of the petitioners for the taxable years 1966 and 1967 in the amounts of $422.22 and $98.02, respectively. The sole issue for our decision concerns the determination of the fair market value of certain property claimed as a charitable contribution under section 170 of the Internal Revenue Code *239 of 1954. [1]
Findings of Fact Some of the facts are stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference. Roger I. Goodman and Connie S. Goodman (hereinafter the designation petitioner refers to Roger), husband and wife, resided in Portland, Oregon at the time their petition was filed herein. They filed joint Federal income tax returns with the district director of internal revenue for the district of Oregon. In the summer of 1965 petitioner purchased a house in Portland, Oregon. The prior owner of this house (Kelly) had been a pharmaceutical supply salesman and had left a large quantity of sodium bicarbonate laxative suppositories in the basement. There were 17 gross of 1-ounce bottles, 8 dozen 3-ounce bottles, and 7 40-pound drums; in the aggregate there were approximately 700 pounds. Kelly told the petitioner that he could dispose of them as he wished. At this time Kelly was no longer employed by the manufacturer, which had gone out of business. In December of 1966 petitioner gave the aforementioned suppositories to Edgefield Manor *240 of Troutdale, Oregon (hereinafter referred to as Edgefield). Edgefield was a home for the aged, a nursing home and a convalescent hospital. Shortly after receipt of the suppositories Lavern E. Jones (hereinafter Jones), 529 Edgefield's supervisor, not being acquainted with Enemets (the brand name of many of the suppositories in question), felt it necessary to consult with Edgefield's medical staff concerning the propriety of their use. The doctors at Edgefield were strongly opposed to using them on any of the patients because they were gas forming and considered too harsh. Jones then contacted the pharmacist at Multnomah Hospital to determine if the hospital could use the suppositories. The pharmacist stated that if Edgefield could not use them, neither would the hospital. Thereafter, Jones sent several bottles to the Multnomah Public Health Department for its use by their public health nurses. However, none of the suppositories was ever used. Edgefield retained the suppositories in its storeroom for over a year. When the need for space arose Jones had two county employees pick them up and take them to the garbage dump, where they were buried. Petitioner placed a value *241 of $2,756.80 on these suppositories for purposes of computing the charitable contribution, here in issue. He determined this value by comparing the price of suppositories sold in retail pharmacies. [2]
On his Federal income tax return for the taxable year 1966 petitioner deducted $2,240.93 as a charitable contribution to Edgefield. On his return for 1967 petitioner deducted $515.87 as a carryover *242 from 1966. Respondent in its statutory notice dated June 19, 1969, stated: (a) It has been determined that the property which you gave to Edgefield Manor in 1966 had no value. Accordingly, your claimed deductions of $2,240.93 and $515.87 for 1966 and 1967, respectively, are unallowable. Opinion In general, section 170 sets forth detailed rules which if adhered to provide a deduction for charitable contributions. If property other than money is contributed the amount of the deduction, subject to the percentage limitations in section 170(b), is determined by the fair market value of the property so contributed. Douglas Goldman 46 T.C. 136, 137 (1966), affirmed 388 F. 2d 476 (C.A. 6, 1967); section 1.170-1(c)(1), Income Tax Regs.
The issue at bar, hear, arose because the petitioner claimed a deduction for the contribution of property which he alleges was worth $2,756.80, while it is the respondent's position that the property had no value. The question is purely factual; and the petitioner has the burden of proof. Douglas Goldman, supra, at 137. We are of the opinion that the petitioner has failed to carry this burden. [3]
*243 The generally accepted definition of fair market value, as set forth in the respondent's regulations, is, the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * Section 1.170-1(c)(1), Income Tax Regs.
In the case at bar petitioner was unable to establish that a willing buyer would pay anything for the suppositories. In fact, the sequence of events has demonstrated to our satisfaction that not even a willing recipient could be found. Not only did Edgefield reject the suppositories but so did the Multnomah Hospital and Public Health Department. An additional indication of the value of the suppositories is the fact that Kelly gave them to petitioner. If the suppositories had had any value it appears to us that Kelly, who had presumably sold suppositories in the past, would have appreciated this and attempted to exact some consideration for them. In accordance with the foregoing, Decision will be entered for the respondent. 530 Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. At trial petitioner admitted that there was no assurance that the brands he compared were of the same chemical composition as those he gave to Edgefield. He merely stated that they had a similar appearance. While we profess no expertise in this area we would assume that most suppositories look pretty much the same. Further, petitioner stated that he could find no Enemets for sale in the City of Portland. He advised us that some of those he gave to Edgefield were Vacuetts but there was no evidence offered to substantiate this claim and, in point of fact, we are not convinced that this would tend to prove a greater value. In addition, due to the fact that petitioner did not know the quantity of Enemets versus Vacuetts we would be unable to make an allocation under any circumstances.↩
3. See footnote 2, supra.↩