John W. Pearsall and Laila W. Pearsall v. Commissioner.
Pearsall v. Commissioner
Docket No. 3524-73. T.C. Memo. 1977-230.
United States Tax Court
T.C. Memo 1977-230; 1977 Tax Ct. Memo LEXIS 212; 36 T.C.M. (CCH) 956; T.C.M. (RIA) 770230; July 25, 1977, Filed John W. Pearsall, III, 320 Mutual Bldg., Richmond, Va., for the petitioners. Robert T. Hollohan, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years as follows: Year
Deficiency
1969
$ 5,305.42
1970
3,154.51
1971
13,580.63
Due to concessions by respondent, the sole issue for our decision concerns the determination of the fair market value of certain property claimed as a charitable contribution under section 170, I.R.C. 1954. Findings of Fact Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. John W. Pearsall (hereinafter petitioner) and Laila W. Pearsall, husband and wife, resided in Richmond, Virginia at the time they filed their petition herein. Petitioners filed joint Federal income tax *214 returns for the calendar years 1969, 1970 and 1971, with the internal revenue service center, Philadelphia, Pennsylvania and the internal revenue service center, Memphis, Tennessee. Petitioners for some period of time prior to 1969 owned 47 pieces of low income housing in Fulton, a black residential area of the city of Richmond, Virginia. These houses were approximately 40 to 60 years old, had no indoor plumbing and provided little more than shelter. In 1968 black leadership among residents in the Fulton community opposed destruction of residences as proposed as part of an urban renewal project planned for the area. This opposition took the form of an ad hoc committee backed with community funds. During this same period a storm of criticism of substandard housing in Richmond had erupted and petitioner was subjected to severe social pressures because of his ownership of housing stated to be substandard. These social pressures included a local newspaper devoting a full page to derogatory comments about petitioner, a nationally syndicated article branding petitioner a "slumlord" and expressions of concern by petitioner's church. In response to this social pressure petitioner, *215 in June 1969, directed his real estate agent to cause his Fulton properties, all of which were scheduled for demolition as part of the urban renewal plan, to be vacated and to advise the tenants to take the next 2 months' rent to relocate. Petitioner testified that he concluded such action was essential to avoid further controversy attaching to his name and destroying his effectiveness as a lawyer. The chairman of the Fulton ad hoc committee urged petitioner to reconsider because during the urban renewal period Fulton residents had a real need for this housing. Petitioner offered to donate the houses, which carried the right to income therefrom, to a charitable organization. A committee was formed which developed information looking to an appropriate response to this offer. When it was reported that no existing community organization had been found to assume the role of landlord, petitioner proceeded with the incorporation on June 23, 1969, of the Fulton Foundation as a tax exempt organization. Respondent has conceded that the Fulton Foundation was organized and operated as an organization described in section 501 (c)(3) and is therefore exempt from taxation under section *216 501(a) for the years in issue. By deed of gift dated June 27, 1969, petitioners conveyed to Fulton Foundation the 47 houses together with the right for such houses to occupy the land on which they were situated and to enjoy all easements and appurtenances thereto for a period of 3 years. The deed specified that the houses were deemed severed from the land and could never revert to petitioners, the Fulton Foundation being required to remove the houses within 60 days of termination of its right to occupancy. The deed of gift further provided that, if an eminent domain proceeding was instituted during the term of the gift, the Foundation's right to occupy the dwellings ceased on the day of the institution of such proceeding. Respondent has conceded that the foregoing constitutes a completed gift and that petitioners had no further interest in the houses. At the time petitioner decided to vacate the property in April, 1969, 31 of the 47 houses were occupied, producing a total monthly rental of $865 or an annual rental of $10,380. Those unoccupied had as of their last occupancy produced an annual rental of $5,790. No evidence was presented with respect to the rentals immediately *217 prior to the gift in June, 1969 because petitioner had waived the last 2 months' rent in his notice to the tenants and did not know how many of the 31 houses which had been rented in April, 1969 were still occupied on the date of the gift: As houses became vacant they were boarded up in compliance with a local ordinance prohibiting the rental of housing without indoor plumbing. Real estate taxes on the houses, separately stated by the City of Richmond from taxes on the land, amounted to $1,106.21. The local real estate assessment for the 47 houses equaled $60,120. Petitioner, for the years 1970 and 1971, made cash contributions to the Fulton Foundation for the real estate taxes due on the property. [1]
At trial petitioner placed a value of $60,516 on these 47 properties for purposes of computing the charitable contribution here in issue. Petitioner assumed a total annual rental in the amount of $16,170 for the 47 pieces of property. This figure included annual rentals based *218 on the actual monthly rentals for April, 1969 plus the annual rent that the unoccupied houses had produced as of their last occupancy. He determined the value of the properties by multiplying this sum by the factors furnished in section 25.2512-5(b) and (c), Gift Tax Regs., which provides a method for valuing a gift of a stream of income for a given period. Petitioner's computations used, as the time factor, a period of 4 years. Petitioner's computation did not take into account projected vacancies during the period, taxes, commissions, maintenance, or expenses of vandalism. His computation of the fair market value of the gift also did not take into account Fulton's assumption of the obligation to demolish the houses at the end of the term of the gift. [2]
Respondent disallowed petitioner's charitable contribution deduction for the donated houses in the amount of $60,120. By reason of the charitable contribution percentage limitation petitioner's charitable contributions were thereby reduced by $10,407.18 in 1969, $17,384.86 *219 in 1970 and $26,818.46 in 1971. Opinion At the outset we must dispose of a procedural issue raised by petitioner at trial and on brief concerning respondent's pleadings. Petitioner contends that the issue with respect to the fair market value of the property contributed was new matter pleaded by the respondent, and under Rule 142(a) of the Court's Rules of Practice and Procedure he has the burden of proof with respect thereto. Petitioner has cited several cases in support of his contention, but after careful study we have found that none substantiates his position. Respondent in his statutory notice dated February 28, 1973, stated: (a) It is determined that the deductions claimed for charitable contributions in the amount of $22,496.34 and $25,125.60 for the taxable years 1969 and 1970 respectively are not allowed in any amount in excess of $12,089.16 and $7,740.74 respectively, since it has not been established that any greater amounts constitute charitable contributions in accordance with section 170 of the Internal Revenue Code. * * * In his statutory notice dated May 7, 1973, respondent used the same language in disallowing charitable contributions *220 in the amount of $26,818.46 for the taxable year 1971. As can be seen the determinations made by respondent were very broad. Petitioner contends that respondent's notice of deficiency can only be read as a determination that no completed gifts were made to the Fulton Foundation in any years because in the same notice petitioners were allowed deductions for real estate taxes and demolition expense that would have been available to them only if they continued to own the houses. In his answer, however, respondent stated that his determination was not based on the premise that there was no gift by petitioners but rather upon the fact that the Fulton Foundation was never operated as required by section 501(c)(3) and "that at the time of the gift it had not been established that the fair market value of the property contributed equaled the $60,120 claimed by petitioners on their return." Respondent subsequently conceded that the Fulton Foundation did qualify as a section 501(c)(3) organization and that petitioners were entitled to deduct as charitable contributions the amounts paid for demolition expenses and real estate taxes. It is readily apparent that respondent merely narrowed *221 the issue after taking a broad position in the statutory notices. The specific reason for the purported deficiencies, as asserted by respondent in his answer, his opening brief and remarks before the Court, is consistent with and inherent in the determination set forth in the notices of deficiency. Proceeding from the broad to the specific, as the respondent has in this case, does not destroy the presumptive correctness of the respondent's determination of deficiency and shift the burden of proof to him. Spangler v. Commissioner, 32 T.C. 782, 793 (1959), affd. 278 F. 2d 665 (4th Cir. 1960), cert. den. 364 U.S. 825; Cf. Sorin v. Commissioner, 29 T.C. 959, 969, affd. 271 F. 2d 741 (2d Cir. 1959). It would be otherwise where respondent's determination is narrowly drawn and, after the matter has been petitioned to the Court, he advances a new position not within the ambit of the determination made in the notices of deficiency. McSpadden v. Commissioner, 50 T.C. 478, 493 (1968). Since respondent has not raised *222 a new issue, we hold that his determination remains presumptively correct, and the burden of proof remains on petitioners. We now turn to the principal issue of what is the fair market value of the 47 houses donated by petitioner to the Fulton Foundation in 1969. In general section 170 sets forth detailed rules which, if adhered to, provide a deduction for charitable contributions. If property other than money is contributed the amount of the deduction is determined by the fair market value of the property so contributed. Goldman v. Commissioner, 46 T.C. 136, 137 (1966), affd. 388 F. 2d 476 (6th Cir. 1967); section 1.170A-1(c), Income Tax Regs.
The issue at bar arose because petitioner claimed a deduction for the contribution of property which he alleges was worth $60,516. It is respondent's position that the property had no value. The question is purely factual, Kaplan v. Commissioner, 43 T.C. 663, 665 (1965), and the *223 petitioner has the burden of proof. Goldman v. Commissioner, supra at 137. We are of the opinion that the petitioner has failed to fully carry this burden. The generally accepted definition of fair market value as set forth in respondent's regulations is: The price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts * * *. In the case at bar petitioner did not establish that a willing buyer would pay anything for the houses. In fact, it is highly unlikely that a willing buyer could be found. This is true because of the age and condition of the property, the fact that more than a third of the houses could not be rented due to a local ordinance prohibiting the rerenting of houses without indoor plumbing, and the fact that the property was scheduled to be demolished as part of a plan of urban renewal. In the absence of such proof, one reliable guide to fair market value is the property's earning capacity. Jerecki Manufacturing Co. v. Commissioner, 12 B.T.A. 1165, 1178 (1928). *224 Petitioner testified that the $60,516 charitable deduction represented his computation of a 4-year interest in the gross rents from the 47 properties. Such value was determined by the application of Table II of Regs. section 25.2512-5(f) and the payment factor provided in section 25.2512(b) of the Gift Tax Regulations to the gross rental value which included the sum of the annual rental value of those houses occupied in April, 1969, and annual rental of unoccupied houses as determined by the rent received on the dates of their last occupancy. Although petitioner's reliance on these tables under the circumstances of this case may be correct, see Hipp v. United States, 215 F. Supp. 222 (W.D.S.C. 1962), we believe that his computations were entirely too optimistic. In the first place, the petitioner used a 4 year time period. By its terms, however, the gift was to terminate at the earlier of 3 years or the institution of eminent domain proceedings. Additionally, petitioner's computation did not account for the obligation assumed by Fulton Foundation to demolish the buildings at the completion of the term of the gift. Scott v. Commissioner, 61 T.C. 654, 662 (1974). *225 Further, petitioner's computation did not take into account any vacancies that might have occurred between the time he had decided to dispose of the property in April, 1969 and June 27, 1969, the date of the gift. His computation also made no provisions for the loss of rental income resulting from vacancies occurring during the term of the gift. [3]
Additionally, petitioner made no provision for expenditures for maintenance, repairs, taxes or costs of vandalism. Finally, he did not factor into his computation the possibility that the term of the gift would be less than 3 years due to the institution of eminent domain proceedings. After a careful study of the evidence presented, we conclude that the fair market value of the 47 buildings was $25,000 at the time of the donation. In view of the foregoing, *226 Decision will be entered under Rule 155. Footnotes
1. In 1969 petitioner paid the taxes prior to the gift to the Fulton Foundation. In 1970 and 1971 he paid to Fulton $872.80 and $247.09, respectively, for the real estate taxes assessed on the houses.↩
2. Petitioner made a cash contribution in the amount of $4,500 in 1970 to the Fulton Foundation to assist in the payment of the demolition expense.↩
3. Because of a local ordinance prohibiting the rerenting of houses without indoor plumbing, petitioner boarded up each house as it became vacant. This Court does not accept the unsupported contention by petitioner that he could have persuaded the City of Richmond to give the Fulton Foundation permission to rent those houses that were prohibited from being rerented.↩