RALPH E. and DARLENE G. MUNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Munson v. Commissioner
Docket No. 7201-78.
United States Tax Court
T.C. Memo 1980-52; 1980 Tax Ct. Memo LEXIS 533; 39 T.C.M. (CCH) 1101; T.C.M. (RIA) 80052; February 27, 1980, Filed Ralph E. Munson, pro se. Peter Bakutes, for the respondent. QUEALY
MEMORANDUM FINDINGS *535 OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in the amount of $5,799 in petitioners' Federal income tax for the taxable year 1974. The issues for our determination are: (1) Whether petitioners are entitled to deductions for charitable contributions under section 170 [1] totaling $1,575 for the donation of a 1962 Buick and for the donation of a medical library. (2) Whether petitioners sustained a theft loss during 1974 in the amount of $14,300 resulting from an embezzlement within a corporation in which petitioners held stock. [2]
*536 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Ralph E. Munson and Darlene G. Munson (petitioners), husband and wife, resided in Menlo Park, California at the time they filed their petition in this case. Petitioners filed a joint Federal income tax return for the year 1974 with the Director, Internal Revenue Service Center, Fresno, California. During October of 1974, petitioners donated a 1962 Buick to Loma Linda Academy in Loma Linda, California. Loma Linda Academy is a donee of the type described in section 170(c)(2). Petitioners received a letter acknowledging receipt of the Buick.At the time of the contribution, the Buick was in need of mechanical repair to such an extent that the cost of those repairs would have exceeded its value. On their Federal income tax return for the calendar year 1974, petitioners claimed a deduction for two charitable contributions. One was a deduction of $450 for the Buick and the other was a deduction in the amount of $1125 for the medical library. In his notice of deficiency respondent disallowed petitioners' *537 claims contributions for failure to substantiate the dates, the adjusted bases, and the fair market values of the contributions. Dan'l A. Boone, Inc. of Nevada [hereinafter Boone] was a Nevada corporation. During 1967, petitioners wrote the following personal checks for the purchase of capital stock in Boone: Date of Check
Amount of Check
3/31/67
$ 3,000.00
7/5/67
7,500.00
7/5/67
423.68
Total
$10,923.68
The checks were made payable to Sunnyvale Meadows and to Sunnyvale Investment Group, escrow holders designated to hold contributions to the capital of Boone until stock certificates could be issued. The checks of petitioners were negotiated in 1967. Petitioners received stock certificates from Boone for the stock purchased. On April 8, 1974, Elijah A. Boone was convicted on 29 counts of security and grand theft violations. These 29 counts included 15 counts of illegal sales of Boone securities using false representation, and sales without first obtaining the legal permits necessary to sell stocks. Elijah A. Boone retained the money from these stock sales for his own use rather than depositing it with the corporation. Cal. Penal Code section 484 *538 (West 1970) defines theft to include the fraudulent appropriation of property by one entrusted to hold that property. The stock sales which resulted in the April 8, 1974 conviction of Elijah Boone occurred between November 1969 and April 1970. Petitioners first learned in 1974 that Elijah A. Boone had embezzled funds from Boone. Respondent has conceded that petitioners are entitled to a long-term capital loss during 1974 equal to their adjusted basis in the Boone stock. [3]
OPINION Rule 142(a), Tax Court Rules of Practice and Procedure, places the burden of proof on petitioner with respect to the deficiency as determined by respondent. Welch v. Helvering, 290 U.S. 111, 115 (1933). When, as here, taxpayer claims deductions which are disallowed by the Internal Revenue Service, the burden is on the taxpayer to prove to the Tax Court the merit of the (deductions). Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975) *539 rehearing denied June 13, 1975, cert. denied 423 U.S. 1015 (1975); Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 361 (9th Cir. 1974) affirming a Memorandum Opinion of this Court. The Ninth Circuit, to which an appeal in the case would normally go, points out that there are actually two "burdens" on a petitioner to the Tax Court: (1) the procedural "burden" imposed by the initial presumption in favor of respo ndent, and (2) the burden of persuasion which petitioner must carry to prove his case. Rockwell v. commissioner, supra at 886. The presumption in favor of respondent is a procedural device which requires the taxpayer to come forward with enough evidence to support a finding contrary to the Commissioner's determination. Rockwell v. Commissioner,supra.After satisfying this "procedural burden", petitioner must still carry his ultimate burden of persuasion. So the burden is on petitioner not only to show that respondent is wrong, but also to produce evidence from which another and proper determination can be made. Lightsey v. commissioner, 63 F.2d 254, 255 (4th Cir. 1933). In this case, petitioners *540 have totally failed to carry their burden of proving that the Commissioner was wrong in his determination. 1. Charitable Contributions
There are two deductions taken under section 170 which are at issue here: the gift of the Buick to Loma Linda Academy and the gift of the medical library. a. Conation of the 1962 Buick
The issues with respect to the contribution of the Buick to Loma Linda Academy are (1) the fair market value of the Buick at the time of its donation and (2) petitioners' basis in the Buick at the time of the donation. The parties have stipulated that petitioners donated a 1962 Buick to Loma Linda Academy during 1974. The parties have also stipulated that Loma Linda Academy is a qualified donee of the type described in section 170(c)(2). The value o the Buick at the time of the contribution is at issue. Section 170(a) allows a deduction for any charitable contribution made during the taxable year provided that the contribution is verified under the regulations prescribed by the Secretary. If a charitable contribution is made of property other than money, the amount of the contribution is the fair market value of the property at the time of *541 the contribution. Goldman v. Commissioner, 46 T.C. 136, 137 (1966), affd. 388 F.2d 476 (6th Cir. 1967); sec. 1.170A-1(c)(1), Income Tax Regs.
The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs.
The parties have agreed that at the time of the donation the automobile donated by petitioners would have required such extensive mechanical repair as to cost more than the value of the car. However, even that stipulation is of little assistance to the Court since petitioners have failed to introduce any probative evidence relative to the value of the Buick at the time of the donation. [4]
*542 We therefore find that petitioner has failed to carry his burden in establishing that the 1962 Buick had any fair market value at the time it was donated to Loma Linda Academy and is therefore not entitled to a charitable contribution for it. Because of this finding, it is unnecessary for us to examine the petitioners' basis in the Buick. b. Donation of Medical Library
The issues with respect to the claimed charitable contribution of the "medical library" are: (1) whether the "medical library" was donated to a qualified organization under section 170(c); (2) petitioners' basis in the property claimed to have been donated; and (3) the fair market value of the property at the time of the donation. On petitioners' tax return the recipient of the "medical library" was listed as Montemorelos Mission Hospital in Mexico. Upon learning at trial that section 170(c) does not include foreign donees within the entities eligible to receive a contribution, petitioner husband stated that the library had been donated to Monument Valley Mission Hospital in Monument Valley, Utah. Petitioner presented no substantiation relating to a contribution to either Montemorelos Mission Hospital *543 or Monument Valley Mission Hospital.
Respondent maintains that petitioners have failed to establish the identity of a qualified donee of the claimed contribution and have also failed to substantiate the items contributed. We agree. Section 1.170A-1(a)(2)(ii)(c), Income Tax Regs., requires a taxpayer to verify a claimed contribution of property other than money where the deduction exceeds $200 by attaching to the return a written statement which includes a description of the property claimed to have been donated. Although petitioner husband has repeatedly stated that he has such a list, he has never produced it. We hold that petitioners have failed to carry their burden of proof regarding the contribution of the medical library. There was no written corroboration of this donation. The testimony regarding the contribution was vague and inadequate. Because petitioner husband has failed to establish the identity of the donee of his books, we need not reach the question of the value of those books at the time of the contribution.
2. Theft Loss
Petitioners claimed a "fraud loss" on their return in the amount of $14,300 attributable to the purchase of stock in Boone. *544 The amount of this loss was based upon the alleged value of their Boone stock [5] (less the $100 limitation under section 165(c)). At trial petitioner husband contended that the funds deposited for the purchase of the Boone stock were misappropriated, and that this misappropriation resulted in a theft loss to them. Respondent argues that no theft loss was sustained by petitioners. Respondent has conceded that petitioners sustained a long-term capital loss during 1974 in the amount of $10,923.68. This amount represents the payments made by petitioners for the Boone stock which respondent concedes became worthless during 1974. Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(b) prescribes that the amount of the deduction for any loss under section 165(a) shall be the adjusted basis as determined under section 1011. [6]
*545 Thus petitioners' loss, whether it is attributable to a theft as petitioners contend or is a worthless stock loss as respondent concedes, is limited to the adjusted basis as computed under section 1011. For tax purposes, the existence of a theft loss is dependent upon the law of the jurisdiction wherein the alleged loss occurred. Monteleone v. Commissioner, 34 T.C. 688 (1960). Edwards v. Bomberg, 232 F.2d 107 (5th Cir. 1956). Petitioners resided in California. Petitioners wrote checks on a California bank in order to purchase the Boone stock. Petitioners deposited their investment checks with a California escrow holder. The acts for which Elijah A. Boone was convicted occurred in California.All the transactions which gave rise to petitioners' claim occurred in California. The existence of the theft must be tested under California law. Under the wording of Cal. Penal Code section 484 (West 1970) as well as the cases decided thereunder, theft includes the taking of money from another upon false representations or false pretenses. People v. Britz, 17 Cal. App. 3d 743, 95 Cal. Reptr. 303 (3d Dist. Ct. App. 1971); *546 People v. Daniels, 192 P.2d 788, 85 Cal. App. 2d 182 (1st Dist. Ct. App. 1948). In California, the crime of embezzlement is defined as the fraudulent appropriation of property by a person to whom it has been entrusted. Cal. Penal Code section 503 (West). The offense of embezzlement is complete when the agent or trustee diverts the entrusted property from the trust purpose. 95 Cal. Rptr. at 307. Petitioners argue that the funds deposited by petitioners with the Boone escrow holder were embezzled by the promoter of Boone rather than being placed in Boone's capital account. Petitioners further contend that as a result of this embezzlement all capital stock in Boone became worthless. Petitioners conclude that they have sustained a theft loss. Petitioners cite the 1974 conviction of Elijah A. Boone on 29 counts of grand theft and illegal sales of securities as evidence that a theft was perpetrated upon them. Both respondent and the Court requested that the petitioners secure a copy of the indictment of Elijah A. Boone. Petitioners have failed to do so. The parties have stipulated as to certain facts concerning the indictment *547 and conviction of Elijah A. Boone. Those facts indicate that the acts of theft for which Elijah A. Boone was convicted were acts perpetrated against the Boone corporation and not against petitioners individually. Petitioners are not entitled to a theft loss deduction under such circumstances. Durden v. Commissioner, 3 T.C. 1 (1944). Here, based upon the scanty evidence presented to the Court, we find that petitioners paid their money to the escrow holder and they received stock certificates from Boone in return for their payment. Consequently it appears that the escrow holder forwarded petitioners' investment to Boone's capital account. We find that petitioners have failed to meet their burden of proving that a theft was perpetrated against them. Although petitioners have introduced no evidence which would support a finding that the Boone stock had become worthless as of the end of the taxable year 1974, [7] respondent's concession of this issue makes it unnecessary for us to decide this question. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended.↩
2. Prior to trial respondent submitted a motion for damages pursuant to sec. 6673 and a motion for judgment on the pleadings. Respondent's reason for submitting the motions was attributable to the fact that at the outset petitioners had filed a protestor type petition and an amended petition with the Court failing to allege specific assignments of error in respondent's determination of tax liability. At trial respondent's counsel noted that they were not going to push these motions because petitioners had cooperated in the preparation of a stipulation of facts which narrowed the issues for trial. Rule 41(b), Tax Court Rules of Practice and Procedure↩, treats issues tried by express or implied consent of the parties, as if they had been raised in the pleadings. Moreover, failure of the parties to amend the pleadings does not affect the result of the trial of these issues. This Court has interpreted respondent's statements at trial as a withdrawal of the motion for damages under sec. 6673 as well as respondent's motion for a judgment on the pleadings. Therefore, these motions will be treated as withdrawn and will not be discussed herein.
3. This concession will not affect petitioners' tax liability for the year at issue since petitioners have already claimed the maximum capital loss deduction allowable for 1974 pursuant to secs. 165(f) and (g) and 1211.↩
4. At trial petitioner testified as follows in reference to the $450 amount used as a deduction: * * * I arrived at that figure by referring to my accountant, who declared that the $450.00 represented approximately one-third of the cost that we had paid for the car, when we bought it some two years before. As stated at trial, the Court cannot accept this statement as adequate proof of value. Although respondent failed to object at trial, such evidence is clearly not competent to establish value even though it would be competent to show how petitioner arrived at his figure. Moreover, petitioner never established any expertise on the part of his accountant to value automobiles. Petitioner also submitted a copy of a classified advertisement which contained an ad, "Buick '62 Al $250 * * *".Since we have no idea of the condition of the advertised car compared to petitioners' car, the listing is of no assistance to the Court.↩
5. Petitioner husband testified at trial that the value of the stock had "* * * gone up at one point to $14,400," but he has never presented to this Court any evidence to substantiate that value or to substantiate when the stock had that value.↩
6. Sec. 165(c) further limits the deductions of losses of individuals allowed under sec. 165(a) but because of our decision herein and concessions by the parties, the limitations within sec. 165(c) are not pertinent.↩
7. See for example Jasinski v. Commissioner, T.C. Memo 1978-1↩.