ALLEN W. KOFTINOW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Koftinow v. Commissioner
Docket No. 24071-83.
United States Tax Court
T.C. Memo 1986-396; 1986 Tax Ct. Memo LEXIS 214; 52 T.C.M. (CCH) 261; T.C.M. (RIA) 86396; August 25, 1986. C. R. E. Smith, for the petitioner. Patricia Anne Golembiewski, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioner's 1979 Federal income tax in the amount of $13,588. The issues for decision are the determination of the fair market value of property contributed to the State of California and whether petitioner is entitled to a charitable contribution deduction for other property purportedly contributed to the State of California. FINDINGS OF FACT Some of the facts have been stipulated, and *215 are found accordingly. The stipulations and the exhibits attached thereto are incorporated herein by this reference. In addition to the stipulations and the trial testimony, the Court, in the presence of both counsel, viewed the contributed property. Petitioner was a resident of Steamboat Springs, Colorado, at the time he filed his petition herein. He filed his Federal income tax return for 1979 with the Internal Revenue Service Center, Ogden, Utah. Several similarly situated petitioners in other cases have stipulated to be bound to the resolution of the issues presented herein. Gualala Investment Company (hereinafter "Gualala"), a limited partnership of which petitioner was a limited partner, contributed a 72 foot tall statue, a quarter acre of land and a footpath easement to the State of California in December of 1979. [1]Gualala had had the statue appraised and, pursuant to the appraisal, deducted $750,000 as a charitable contribution under section 170. [2] Petitioner, on his Federal income tax return for 1979, deducted $36,722, his proportionate share of Gualala's $750,000 charitable contribution deduction. *216 In the notice of deficiency, respondent determined that the fair market value of the contributed property at the time of the contribution was only $50,000. He disallowed $34,274 of petitioner's claimed charitable contribution deduction. The 72 foot tall statue contributed by Gualala is entitled Expanding Universe. It was created by an Italian born artist, Beniamino Bufano. Bufano, who died in 1970, had a personality as intriguing as his art and was somewhat of a celebrity in California. Respondent's expert's report indicates that Bufano's reputation extended beyond the borders of California. Bufano's works were reviewed by British art critic Roger Fry and the noted American art critic Alfred Frankenstein. Bufano was the subject of at least five published books, one of which was published in Rome and another of which was published in Tokyo, and he was the subject of or mentioned in articles which appeared in the Saturday Evening Post, Harper's Magazine, Newsweek, Time and the New York Times. It is clear that Bufano's fame was not limited solely to California. Expanding Universe is the largest of all of Bufano's art works. It is a 72 foot tall obeliscoid shaped concrete *217 and mosaic statue majestically standing on the edge of a rocky cliff directly overlooking the Pacific Ocean in Sonoma County, California. Its presence on the cliff enhances the already impressive juxtaposition of the ocean, the sky, and the land. The statue is also well within viewing distance of California State Highway No. 1. Completed in 1969, it is crowned with a reddish colored hand with fingers extended skyward. Below the hand on one side of the statue is a contoured mosaic face looking out over the ocean and a large mosaic panel which depicts a figure clothed in a long robe. On the opposite side of the statue is a larger mosaic panel. This larger panel depicts a child's face, several birds, and a haloed figure clothed in white. OPINION Section 170 authorizes a deduction for charitable contributions. Where a charitable contribution is made in property other than money, the amount of the contribution is generally the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under *218 any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.
We will first consider the contribution of Expanding Universe to the State of California. Since respondent does not dispute that petitioner is entitled to a charitable contribution deduction in an amount equal to the fair market value [3] of the statue, our inquiry in regard to its contribution is limited to ascertaining its fair market value. Petitioner contends that the fair market of the statue is $750,000. Although respondent determined in his notice of deficiency that the fair market value of the statue was only $50,000, he now contends that the fair market value does not exceed $275,000. The issue of valuation is more properly suited for the give and take of the settlement process than adjudication. Buffalo Tool & Die Mfg. Co. v. Commissioner,74 T.C. 441, 451 (1980). The parties have decided that in this case the fair market value of the statue is better determined by adjudication. We have closely examined the experts' reports *219 [4] and fully considered the testimony and the arguments made by the parties as to why their opponent's expert's report is unreliable. "We may embrace or reject expert testimony, whichever, in our best judgment, is appropriate." Chiu v. Commissioner,84 T.C. 722, 734 (1985) and cases cited therein. For the reasons stated below, we do not completely embrace either report. We do not feel that a detailed recitation of the contents of the reports will serve any purpose. Accordingly, our comments about the reports will be brief. The report of respondent's expert, which determined the fair market value of the statue to be between $250,000 and $275,000, is unpersuasive because it provides no convincing reasons in support of its determination. See Tripp v. Commissioner,337 F.2d 432, 434 (7th Cir. 1964), affg. a Memorandum Opinion of this Court. Further, the report is erroneous because it values the statue in an improper market, that is a market in which the purchasers buy to resell. See Goldman v. Commissioner,388 F.2d 476, 478 (6th Cir. 1967), *220 affg. 46 T.C. 136 (1966); Lio v. Commissioner,85 T.C. 56 (1985); Skripak v. Commissioner,84 T.C. 285 (1985); and Anselmo v. Commissioner,80 T.C. 872 (1983), affd. 757 F.2d 1208 (11th Cir. 1985). We find the report of petitioner's expert, which determined the fair market value of the statue to be between $750,000 and $800,000, is more persuasive than respondent's expert's report. It utilized three separate methods to value Expanding Universe. The methods considered the cost, in 1979, to reconstruct a full scale replica of Expanding Universe, extrapolated the fair market value of Expanding Universe from the fair market value of Bufano's smaller art works, and considered the amounts that would be charged to create a 72 foot tall statue by comparably famous California artists such as Bruce Beasley, Tom Martin Browne, Jerome Kirk, Fletcher Benton and Mark DiSuvero. Though persuasive, the report, in comparing the three methods, erred. The final sentence of the report states that the fair market value of the statue will approach the upper limit of the range of values determined under a particular method *221 utilized by the report.The range of values determined under this particular method was $507,770 to $623,888. Therefore, the upper limit of this range would be approximately $600,000. Inexplicably the line immediately following the final sentence states the fair market value of the statue is $750,000 to $800,000, rather than $600,000. We view this obvious contradiction as an error. We find that had the error not occurred the fair market value of the statue as determined by the report would have been $600,000. We feel that the $600,000 figure is reasonable and accordingly hold that the fair market value of Expanding Universe in December of 1979 was $600,000. This amount shows that the values determined under the three separate methods were not simply averaged, but rather, were weighted. We find that the relative weighting apparently used by the report is in accord with the weighting we would use to reflect our appreciation of how indicative each method was of the fair market value of Expanding Universe. Considering the lack of data more indicative of the fair market value, [5] we feel that this approach was the best way to value Expanding Universe. *222 Having resolved the issues relating to the contribution of the statue, we now consider the contribution of the quarter acre of land and footpath easement (hereinafter "land") contributed with the statue to the State of California. For some reason, petitioner failed to produce any evidence as to the fair market value of the land. Both experts clearly testified that their valuations of the statue were determined without regard to the fair market value of the land and petitioner candidly admits on brief that no valuation evidence was presented as to the land. Further, it appears that Gualala and petitioner failed to claim any amount on their respective returns for the contribution of the land. Gualala's partnership return for 1979 was not made a part of the record, however, the parties stipulated that Gualala claimed a charitable contribution deduction of $750,000 in 1979. Since this amount is the lowest value of the range for which the statue was appraised in 1979, we assume that the claimed charitable contribution deduction is entirely attributable to the statue. Petitioner's individual return for 1979 was made a part of the record, but in claiming the charitable contribution *223 deduction, it fails to describe the property contributed. However, the amount of the claimed deduction exactly equals petitioner's percentage interest in Gualala times the $750,000 deduction claimed by Gualala. Accordingly, we likewise assume that petitioner's claimed charitable contribution deduction is entirely attributable to the statue. The failure to present valuation evidence and the failure to claim charitable contribution deductions is most puzzling. [6] The record, as inadequately developed by petitioner in regard to the land, does not explain these failures. [7]
*224 In light of the failure of petitioner to present valuation evidence with respect to the land, the failure of petitioner and Gualala to claim charitable contribution deductions for the contribution of the land, and the failure of petitioner to adequately develop the record with respect to the land, we hold that petitioner has failed to prove his entitlement to a charitable contribution deduction for the contribution of the land to the State of California. Decision will be entered under Rule 155.
Footnotes
1. The contributed property and hundreds of acres of land were acquired from a corporation in which Gualala was a 79 percent shareholder. A large portion of the acquired land had been subdivided by such corporation. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Our references to fair market value are to the fair market value at the time of the contribution.↩
4. Our references to the experts' reports include also the clarifying testimony given at trial by each expert as to his respective report.↩
5. The lack of data more indicative of the fair market value of Expanding Universe is not attributable to any failure on the part of the parties. Rather, it is due to the fact that more probative evidence simply does not exist. See Hawkins v. Commissioner,T.C. Memo. 1982-451↩, n. 20, "Valuing a unique piece [of art work] is clearly a most difficult task, and the degree of proof which we require must be tempered by the practicalities of the situation * * *."
6. These failures may be attributable in part to petitioner and Gualala's beliefs that Gualala was a dealer in real estate and the basis in the quarter acre of land was zero or near zero. In such a case, sec. 170(e)(1)(A) would reduce the charitable contribution deduction for the quarter acre of land to zero or near zero. These failures may alternatively be attributable to a contribution in a prior taxable year of an interest in the land. In such a case, the contribution of the remaining interests in the land, if any, would not create a charitable contribution deduction because the remaining interests in the land, if any, would have little or no fair market value. These failures may be attributable to other reasons as well. ↩
7. Respondent at no point addresses the deductibility of any amount for the contribution of the land.↩