JOHN V. WEHAUSEN and MARY K. WEHAUSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wehausen v. Commissioner
Docket No. 1787-86.
United States Tax Court
T.C. Memo 1988-460; 1988 Tax Ct. Memo LEXIS 504; 56 T.C.M. (CCH) 299; T.C.M. (RIA) 88460; September 22, 1988. *504 Held, the fair market value of a collection of domestic and foreign mathematical journals determined. J. Richard Johnston, for the petitioners. Erik P. Doerring, for the respondent. NIMS
MEMORANDUM FINDINGS *505 OF FACT AND OPINION NIMS, Chief Judge: Respondent determined a deficiency in petitioners' 1981 Federal income tax of $ 7,512. After concessions, the sole issue for decision is whether petitioners are entitled to a charitable contribution deduction in excess of $ 5,245 for their donation of a collection of mathematical journals to the Mathematical Sciences Research Institute, a tax-exempt charitable organization. While fully disallowing petitioners' charitable contribution deduction in his notice of deficiency, respondent concedes on brief that the contribution deduction is allowable to the extent of $ 5,245. Petitioners in turn concede that because they previously deducted $ 1,805 of the donated journal costs as trade or business expenses under section 162, they will be required to reduce their charitable contribution deduction by the amount of the business deductions previously taken. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners John V. and Mary K. Wehausen (hereinafter "petitioner" will refer to *506 John V. Wehausen) resided in Berkeley, California, at the time they filed their petition. During the year in question, petitioner was employed as a Professor of Engineering Science in the Naval Architecture Department of the University of Californi at Berkeley, California. Prior to beginning his 30-year teaching career at U.C. Berkeley, petitioner was employed for six years as the editor of a mathematical abstracting journal called Mathematical Reviews, and before that as a researcher and mathematics professor. Through subscriptions, gifts and professional activities, petitioner assembled an extensive collection of mathematical periodicals and journals during his more than 40-year career. This collection spanned a period of 54 years and included both United States and foreign publications. Some of the publications consisted of consecutive volumes. Petitioners had previously deducted a total of $ 1,805 in subscription fees for publications included in their donated collection. In 1981, petitioner donated his collection of mathematical journals to the newly established Mathematical Sciences Research Institute (MSRI), a tax-exempt charitable organization. MSRI in turn agreed *507 to provide petitioner with an appraisal of the donated collection. An appraisal in the amount of $ 5,245 was made by Henry Y. Moises (Moises appraisal) on behalf of MSRI. A copy of this appraisal was received by petitioner approximately one week before he was scheduled to leave the country for a period of several months. Petitioner was not satisfied with the accuracy of the Moises appraisal and arranged with MSRI for a second appraisal to be made upon his return to the United States. Nonetheless, petitioner decided to file the 1981 return based upon the Moises appraisal prior to his departure. In a statement attached to their 1981 return, petitioners declared that they considered the Moises appraisal to have been incompetently prepared, and that they intended to obtain a new appraisal and file an amended return. At the suggestion of petitioner, MSRI obtained a second appraisal from Bernard M. Rosenthal (Rosenthal), a friend of petitioner, who appraised the donated collection at a value of $ 19,900 (Rosenthal appraisal) for a fee of $ 300. Shortly thereafter, petitioners filed an amended return in which they claimed a deduction based upon the $ 19,900 valuation, but limited their *508 current deduction to $ 17,625, 30 percent of their 1981 adjusted gross income. In his statutory notice of deficiency, respondent disallowed the entire $ 17,625 charitable contribution deduction claimed by petitioners in 1981. ULTIMATE FINDING OF FACT Petitioners' collection of mathematical journals and periodicals had a value of $ 6,628 on the date of contribution to MSRI. OPINION Petitioners donated a collection of mathematical journals and periodicals to a qualified charity. For reasons stated in our findings of fact, they based their original charitable contribution deduction on a $ 5,245 appraisal with which they vigorously disagreed. An amended return was subsequently filed to reflect the higher $ 19,900 value reflected in a second appraisal. Section 170(a)(1)[1] allows a charitable contribution "if verified under regulations prescribed by the Secretary." Section 1.170A-1(c), Income Tax Regs., provides that if the donation is made in property other than money, "the amount of the contribution is the fair market value of the property at the time *509 of the contribution" and that "fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of the relevant facts." The parties agree that the donation was made to a qualified charity but cannot agree on the value of the donation. Petitioners assert that the value of the collection is most accurately reflected by the Rosenthal appraisal, while respondent counters that we should accept the values established in the Moises appraisal. Petitioners have the burden of proving the fair market value of the donated collection. Rule 142(a). We find that petitioners established the value of the foreign publications to be represented by the Rosenthal appraisal, but that they failed to prove the value of the donated domestic publications. *510 In attempting to establish the fair market value of their collection, petitioners rely heavily upon the testimony of Rosenthal, an antiquarian book seller who performed the second appraisal. Rosenthal is an experienced appraiser of books and journals who had performed over 100 appraisals since moving to San Francisco in 1970. Prior to his move west, Rosenthal maintained a bookstore in New York for approximately 17 years. During his career, Rosenthal has been active member of the Antiquarian Booksellers Association of America. Within this professional organization, he has served extensively on various committees including a committee that dealt with procedures for performing appraisals, and from 1968 to 1970 as its president. However, prior to appraising petitioners' collection, Rosenthal had not purchased, sold, or otherwise dealt in mathematical journals. Domestic Publication Appraisal
Rosenthal explained that in valuing the domestically published journals, "I simply looked in the backs of the journals, looked at the price of back issues and added them up." This methodology for valuing petitioners' collection was selected by putting "myself in the position of a librarian *511 having to start a library from scratch." Such a librarian would "obviously immediately build up the library by buying the journals from the publishers at the subscription prices that the publishers list." Nonetheless, it appears that Rosenthal used the lower individual subscription rates, as opposed to the higher institutional rates commonly charged libraries, in arriving at his appraisal. Petitioners contend that the Rosenthal appraisal and their belief that the collection was worth $ 15,000 or more establish the $ 19,900 value of the collection. They maintain that since respondent failed to produce evidence of the collection's value, the testimony of petitioners' witnesses cannot be disregarded unless the Court itself has knowledge and experience as to the valuing of the journals in question. In support of this contention they refer us to Cullers v. Commissioner,237 F.2d 611 (8th Cir. 1956), revg. T.C. Memo. 1955-228; Alvary v. United States,302 F.2d 790 (2d Cir. 1962). While expert testimony may not arbitrarily be disregarded by the Court *512 after being accepted as credible, we are not bound by the opinion of any expert witness where the opinion is contrary to our own judgment, even where only one party presents an expert witness. Tripp v. Commissioner,337 F.2d 432 (7th Cir. 1964), affg. a Memorandum Opinion of this Court; In re Williams' Estate v. Commissioner,256 F.2d 217, 219 (9th Cir. 1958), affg. T.C. Memo. 1956-239; Kreis' Estate v. Commissioner,227 F.2d 753, 755 (6th Cir. 1955), affg. T.C. Memo. 1954-139. On the contrary, fair market value is a question of fact to be determined from the entire record, Estate of DeBie v. Commissioner,56 T.C. 876, 894 (1971), and should reflect the retail market in which the property ordinarily is sold to its ultimate customer. Skripak v. Commissioner,84 T.C. 285, 322 (1985); Goldman v. Commissioner,388 F.2d 476, 478 (6th Cir. 1967), affg. 46 T.C. 136 (1966). Within the context of this case, fair market value must reflect the price at which secondhand mathematical journals would exchange hands between a willing buyer and a willing *513 seller. Section 1.170A-1(c)(2), Income Tax Regs.
Petitioner's expert, Rosenthal, would have us believe that the back-issue offerings of the domestic publishers represent the value of similar publications in the secondhand market. On the facts of this case, we find this valuation method to be flawed. The most apparent flaw in Rosenthal's valuation method is its failure to recognize that the demand for and value of a secondhand periodical may differ from that of a publisher's back issue (which in absence of evidence to the contrary, we presume to be unused or of a very high qualify). While we recognize that secondhand periodicals may resemble the condition and quality of back issues, and may in fact be of comparable value, petitioners bear the burden of showing this to be the case. Rule 142(a). Absent evidence of comparability, we will not assume that a publisher's back-issue subscription price represents the fair market value of a secondhand periodical. See Goldman v. Commissioner,46 T.C. 136, 138 (1966), affd. 388 F.2d 476 (6th Cir. 1967); Skripak v. Commissioner,84 T.C. at 325. Our review of *514 the record reveals no persuasive evidence that petitioners' donated collection of secondhand periodicals was comparable to the quality and value of the back-issue prices Rosenthal used as the basis for his appraisal. And as no secondhand catalog, back-issue subscription list or evaluation of the collection's quality was produced, we are unable to independently determine whether the values assigned by Rosenthal accurately represented those of the secondhand market. We are also troubled by Rosenthal's assumption that petitioners' collection should be valued as if it were to be acquired by a library. No evidence was presented to corroborate that libraries were retail consumers of secondhand mathematical journals and periodicals. Conversely, Rosenthal's adoption of the publisher's "subscription price" as the price normally paid by newly created libraries implies a belief that libraries prefer to acquire their collections directly from publishers as opposed to the secondhand market. In any event, we are not convinced from the record that libraries represent consumers of secondhand mathematical journals and periodicals. Consequently, we are not pursuaded that an appraisal based upon *515 the premise of starting a library collection correctly reflects the retail consumer market for secondhand periodicals. See Skripak v. Commissioner, supra at 325. And while in some cases it may be possible for the Court to adjust the discredited assumptions of expert valuations, Anselmo v. Commissioner,80 T.C. 872, 884-885 (1983), affd. 757 F.2d 1208 (11th Cir. 1985), the absence of reliable alternate valuation bases in the record prevents us from doing so in this case. Accordingly, we disregard the Rosenthal appraisal as it pertains to the valuation of the donated domestic publications. We are similarly unpersuaded by petitioner's testimony as to the worth of the domestic collection. Petitioner testified that he believed his collection to be worth in excess of $ 15,000 based upon his experience as a mathematical journal editor, information contained in catalogs he received and prices friends received for similar collections. Unfortunately, no catalog or evidence of similar sales was produced. Moreover, while petitioner did read from a *516 1987 price list of the American Mathematical Society during his testimony, the list did not specify 1981 values. In absence of corroboration, we find petitioner's testimony to be of little probative value. Accordingly, we conclude that petitioners have not carried their burden of proof as to the value of the domestic publications donated to MSRI. Anselmo v. Commissioner,80 T.C. at 886. However, as respondent has conceded that the Moises appraisal reflects the value of the donated publications, we hold that the domestic publications should be valued at $ 4,533. Foreign Publication Appraisal
We next turn our attention to the valuation of the foreign publications donated by petitioners. We recognize from the outset that foreign mathematical journals may well have an even more limited market than their domestic counterparts. Consequently, while direct evidence of actual sales of similar periodicals would furnish us with the best evidence of fair market value, Chiu v. Commissioner,84 T.C. 722, 734-735 (1985), quoting Estate of Kaplin v. Commissioner,748 F.2d 1109, 1111 (6th Cir. 1984), *517 revg. a Memorandum Opinion of this Court, it is understandable that petitioners did not produce evidence of recent sales. Failure to produce such evidence is not, however, necessary to establish the existence of a market value. Five Star Manufacturing Co. v. Commissioner,40 T.C. 379, 390 (1963), revd. and remanded on another issue 355 F.2d 724 (5th Cir. 1966). Petitioners again rely heavily on the expertise of Rosenthal to establish the value of the donated foreign publications. With respect to these publications, Rosenthal testified that he based his appraisal on his "long experience of what out of print Russian, Polish, Italian or Japanese periodicals fetch on the American market." While never having previously dealt with mathematical journals, Rosenthal established to our satisfaction that he possessed significant prior experience in valuing other types of foreign scholarly journals. We are persuaded that this prior experience provided him with sufficient expertise to determine the market value of foreign mathematical publications. Moreover, in valuing the foreign publications, it appears that Rosenthal did not exclusively rely on back-issue *518 and subscription prices of similar publications, but valued each volume after examining its inherent characteristics. This volume-by-volume methodology is consistent with determining the market value of secondhand foreign publications. Moreover, we do not believe that, as suggested by respondent, Rosenthal's judgment in appraising these foreign publications was colored by his friendship with petitioner. Therefore, we find that the Rosenthal appraisal rebutted respondent's presumption of correctness as to the value of the foreign publications. Welch v. Helvering,290 U.S. 111 (1933). Respondent did not offer any contrary evidence of valuation at the trial, and we value the foreign publications at $ 2,095, consistent with the Rosenthal appraisal. Cullers v. Commissioner, supra at 614. While respondent concedes on brief to the values expressed in the Moises appraisal, the appraisal was not presented by respondent as evidence of proper valuation during the course of the trial. Rather, it indirectly became part of the record as an attachment to petitioners' *519 1981 tax return, which was received into evidence. We view respondent's denial of a deduction based upon the Moises appraisal in his notice of deficiency as a repudiation of the appraisal's validity. Consequently, we refuse to now treat the Moises appraisal as persuasive evidence offered by respondent of an alternate value. The total value of petitioners' collection at the time of contribution was $ 6,628. As a consequence of this determination, no section 170(b)(1) limitation will apply to limit the current utilization of petitioners' 1981 charitable contribution deduction. Therefore, we need not decide what the appropriate limitation would have been had our decision been otherwise. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code as in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩