## MEMPHIS PLANNED PARENTHOOD, INC., Plaintiff–Appellee,

v.

## Don SUNDQUIST, Governor, of the State of Tennessee, et al., Defendants–Appellants.

No. 97–6239.

United States Court of Appeals, Sixth Circuit.

Aug. 13, 1999.

BEFORE: KEITH, NELSON, and NORRIS, Circuit Judges.

## ORDER

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the sug-

gestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

KEITH, Circuit Judge, dissenting.

The petition for rehearing in this case has been returned to the original panel for disposition, after the vote by the members of the *en banc* court fell short of achieving that majority which would have been required to vacate the opinion and judgment of the panel and require the appeal to be decided by the *en banc* court. Our decision today to deny the request for rehearing and adhere to the opinion and judgment delivers yet another blow to the constitutional rights of these young defenseless girls. I believe that no stronger a case exists for rehearing by the full court, and I vigorously dissent from the court's decision to deny rehearing.

At the outset, I wish to note the sharply divided vote by which this court decided to deny rehearing *en banc* is this case, and that the judges who sustained the panel majority were not able to muster a majority among the court's active judges in deciding to deny rehearing.[1] In addition, I note that pursuant to Sixth Circuit Internal Operating Procedure 35(a), as a senior judge, I was not allowed to participate in the vote to rehear this case *en banc* when the court was polled. However, I emphasize that if it were not for this local rule, I would have voted to rehear this case, thereby tipping the scales in favor of a full *en banc* review.[2]

I believe that the seven-seven split among the judges vested with authority to vote on this petition is extremely significant for two reasons.[3] First, the make-up of the sharp division among the court to rehear this case is most telling in that it reaffirms the point made throughout my original dissent—that the majority opinion's outcome-driven result is not based upon the facts or the law, but upon a proclivity towards a displeasure with the state of the law as it stands on the controversial topic of a woman's right to choose to have an abortion, and a minor girl's right to do the same without parental consent. *See Roe v. Wade*, 410 U.S. 113, 152–66, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Bellotti v. Baird*, 443 U.S. 622, 644, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) ("*Bellotti II*").

As I emphasized in my original dissent to the panel's opinion in this case, *see Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 468–97 (6th Cir. 1999) (Keith, J., dissenting), *regardless* of where any member of this court may personally stand on this controversial topic, the highest court of our land has declared that *every* female in this country has a fundamental right to seek an abortion guaranteed to her by the United States Constitution—and in the case of a minor, to seek the abortion without parental consent—absent undue burdens by the state. *See Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 874, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). This is the

---

1. The judges voting to grant the petition to rehear this case are as follows: Chief Judge Boyce F. Martin, Jr., and Judges Gilbert S. Merritt, Martha Craig Daughtrey, Karen Nelson Moore, R. Guy Cole, Jr., Eric L. Clay, and Ronald Lee Gilman. The judges voting to deny the petition to rehear this case are as follows: Judges David A. Nelson, James L. Ryan, Danny J. Boggs, Alan E. Norris, Richard F. Suhrheinrich, Eugene E. Siler, Jr., and Alice M. Batchelder.

2. As a member of the original panel to hear this case, I would have been allowed to sit as a member of the *en banc* court had the petition to rehear this case been granted. *See* 6th Cir.I.O.P. 35(a).

3. It is a well known in this circuit that a "non-vote" constitutes a "no vote" on a petition for rehearing *en banc*; therefore, any attempt to distinguish a "non-vote" from a "no vote" is simply a distinction without a difference.

state of the law, and we as jurists have taken a solemn oath to uphold the law, not to pervert it to serve personal values or social policy preferences. However, in ignoring the monumental obstacles imposed by the State of Tennessee on minor girls seeking to obtain an abortion without parental consent—who frequently are victims of rape, incest, or abuse—the majority does violence to the state of the law and it does so for no other apparent purpose than to promote its stance on this controversial topic. The correctness of the law as espoused by *Roe, Bellotti II, Casey* and their progeny is not for this court to decide, and it is certainly not for this court to ignore or pervert.

My second reason for finding the seven-seven split among the court significant is that I believe it serves as a message of hope to the appellee in this case. That is to say, in my original dissent from the majority opinion, I urged Memphis Planned Parenthood and the young girls whom this decision affects not to become disheartened, noting that "hopefully, when your case is heard by jurists who choose to appropriately apply the law, today's outcome will be different." *See Memphis Planned Parenthood*, 175 F.3d at 497 (Keith, J., dissenting). As a beacon of hope, *one-half* of the active judges on this court chose to rehear this case in an apparent attempt to do just that: apply the law so as to reach the only legally appropriate result possible—affirm the district court's preliminary injunction preventing the State of Tennessee from enforcing its Parental Consent for Abortions by Minors Act ("the Act"). I strongly urge the appellee to be inspired by this glimmer of hope in its quest in seeking justice in this case.

In terms of the state of the law, I begin as I did in my original dissent by emphasizing the *great deference* this court is to afford a district court's decision when reviewing a challenge to a preliminary injunction. *See Mascio v. Public Employees Retirement Sys.*, 160 F.3d 310, 312–13 (6th Cir.1998). That is to say, this court " 'will

reverse a district court's weighing and balancing of the equities *only in the rarest of circumstances.*' " *Id.* (quoting *Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1175 (6th Cir.1995)). The equities weighed by the district court in determining whether to grant a preliminary injunction include " '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.' " *Id.* (quoting *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)). These " 'four considerations applicable to preliminary injunction decisions are factors to be balanced, *not prerequisites that must be met.*' " *Id.* (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)) (emphasis added). Furthermore, it is undisputed that the "undue burden" test is the proper standard to be applied in determining whether the Act's provisions would be found unconstitutional. *See Casey*, 505 U.S. at 877, 112 S.Ct. 2791; *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 196 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998) (citing *Casey* and adopting the undue burden test).

In applying the well-settled law of our circuit to the overwhelming and compelling facts of this case, it is clear that this case does not present the "rarest of circumstances" under which the district court's decision should be disturbed, and the full court should have been afforded an opportunity via *en banc* review to correct the erroneous result reached by the panel majority. As illustrated by my original dissent, based upon the abundant factual record, the district court properly concluded that the appellee showed a substantial likelihood that the five provisions of the statute at issue imposed an undue burden on a minor's right to receive an abortion with-

out parental consent, and were therefore unconstitutional under *Casey.* However, the majority simply ignored or carelessly dismissed the copious record to reach its contrary conclusion which is grounded in neither fact nor law.

For example, based upon the abundant factual record, the district court properly concluded that the twenty-four hour notice of appeal filing requirement likely imposes an undue burden on minor females and is therefore unconstitutional under *Casey,* in that it requires these girls to make telephone calls when they have little or no access to a telephone; requires that they be absent from home, work, or school when accountability is a problem; and requires that they familiarize themselves with a court system which at times appears ominous even to a sophisticated adult, all within a very narrow time frame. The majority's conclusion that no undue burden is placed upon the minors because they may file a notice of appeal in advance of receiving an unfavorable ruling, is unsupported by the record where there is no indication that the minor girls will be capable of utilizing the advance appeal procedure, and where common sense and experience indicate that they likely will not be able to do so. The majority's approach simply fails to consider the very real and perilous position that these girls face as a whole. Furthermore, and perhaps most compelling, is the fact that the majority's reasoning does nothing to show that the district court's factual findings are clearly erroneous or its legal conclusions are invalid based upon the deference we are required to provide the district court when reviewing its decision to grant a preliminary injunction. *See Mascio,* 160 F.3d at 312–13.

The record also supports the district court's conclusion that the appellee showed a substantial likelihood that the other four provisions of the Act imposed an undue burden on the minors subject to the Act and would therefore be found unconstitutional under *Casey.* The majority's con-clusion otherwise regarding each of these provisions is once again groundless in fact or law, and does nothing to render unpersuasive the district court's factual findings, let alone render them clearly erroneous. For example, the majority fails to recognize any of the district court's findings of fact on the Act's sound mind and intellectual capacity requirement, and the ambiguity this requirement presents; instead, the majority simply concludes that the requirement did not impose an undue burden based upon its interpretation of what the requirement seeks from the minor. Once again, without any legal or factual support, the majority reached a result-driven conclusion in clear violation of the scope of its review under *Mascio,* to say nothing of the majority's blatant disregard for the undue burden test required by *Casey.* Likewise, as thoroughly described in my original dissent from the panel decision, the majority sweeps aside the district court's abundant and well-supported factual findings the Act's venue restriction, the Act's *de novo* hearing requirement by the circuit court, and the Act's pre-petition physician consultation requirement, to reach inapposite conclusions not supported by anything in the record.

Then, as if to trivialize the significance of this case, the majority simply does not bother to concern itself with addressing, let alone balancing, the remaining factors attendant to this court's review of a preliminary injunction—whether the movant will suffer irreparable injury, whether issuance of the injunction would cause substantial harm to others, and whether the public interest would be best served by the issuance of the injunction; rather, the majority abruptly ends its "analysis" at the point of concluding that appellee failed to show a substantial likelihood that the five provisions of the Act are unconstitutional. Although it was within the power and purview of the majority to end its "analysis" there, its action in doing so constituted something of an abdication of the majority's responsibility, considering the limited

basis upon which this court is allowed to reverse a district court's decision to grant a preliminary injunction, particularly in a case which involves *fundamental* liberties as guaranteed by our Constitution. In my opinion, the majority's hasty conclusion starkly demonstrates its unwillingness to accurately apply the law in this case.

The district court stated that it was prompted by the fundamental nature of the rights at issue here to address the other factors relevant to a preliminary injunction, even though it had found by the wealth of facts on the record that the appellee had shown a strong likelihood that the Act's provisions were unconstitutional. As I noted in my original dissent, I agree with the district court's jurisprudentially sound approach, especially in a case of this magnitude, and believe that the majority's failure to consider and weigh these other factors presented yet another compelling reason to hear this case by the full *en banc* court. Considering the tenuous position of the girls to whom the Act pertains, as well as the fact that they are facing a most difficult and ominous decision likely without any emotional or financial support, all against the backdrop of a race for time where every passing day presents new obstacles and perhaps increased health risks, I believe that it was particularly necessary for the majority to consider such factors as the likelihood of irreparable injury. Furthermore, the denial of a protected constitutional right is a matter in which the public is always interested, and which should have been balanced and considered in this case. *See, e.g., Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir.1987).

Words cannot adequately express my deep-rooted convictions regarding the seemingly careless fashion in which the majority recklessly disregards the constitutional rights afforded to minor girls, a group of people who are the least able to defend their rights. I therefore adamantly dissent from the court's refusal to correct this inequity through a rehearing by the full *en banc* court. I add as a note to Memphis Planned Parenthood and the young girls whom this decision affects that they should not become discouraged by what appears to be yet another defeat. Your fight for justice should not end here. Our Supreme Court has made it clear that the Constitution guarantees *every* female the fundamental right to choose to have an abortion, and in the case of a minor female the right to do so without parental consent, absent undue burdens imposed by the states. Because the extreme logistical hurdles imposed upon a minor girl seeking to have an abortion without parental consent by the State of Tennessee could not be more patently unconstitutional, I once again strongly encourage you to continue to pursue justice for the exercise of your constitutional rights. It is only through perseverance in what appears to be adversity that change occurs and the smallest voice is heard.

On a further note, I am compelled to add that I do not share Judge Boggs' sentiments about making the final vote tally known via publication in this dissent from the denial for rehearing *en banc*. I am at a loss as to understand why any jurist would take exception to his vote being made publicly known on the controversial topic of abortion, although it appears that Judge Boggs "statement" was apparently spurred by his concern that his position on the abortion issue not be made known to the public.

Indeed, the vote of each panel member is routinely made known to the public in each and every case that is heard, whether the case is published or unpublished. When the court votes on a petition for rehearing *en banc* the result should be no different inasmuch as the "panel," if you will, consists of the entire court. Whatever a jurist's misgivings may be about making the final vote tally known via my published dissent, I personally see no useful purpose in compromising the public interest—indeed the *public right*—to the

breakdown of the final vote tally by cloaking it in secrecy. The public interest served by making the individual vote of any active judge publicly known in a petition for rehearing *en banc* is certainly no less than the public interest served by making the individual vote of any panel member publicly known in any given case.

I emphasize that I have not violated any rule or internal policy by making the final vote tally known in my dissent; nor have I divulged any internal confidential communications. As public servants, the judges of this court have no right to engage in the reprehensible practices of secrecy and concealment advocated by Judge Boggs. Nothing in my dissent reveals anything about the internal deliberations of the court; and I have not requested that Judge Boggs explain why he voted as he did. But in the final analysis, he has no right to conceal his vote from the public. I remain adamant about making the final vote tally known regarding the decision to deny rehearing by the *en banc* court in this case, and will not remove this information which is of such vital public concern from my dissent.

With that said, I caution that we not lose sight of what is at issue in this case: the right of minor females to have an abortion without parental consent absent undue burdens by the state, as guaranteed to them by the United States Constitution and Supreme Court precedent. We should not be distracted by challenges from judges who take issue with their voting record on a given case being made known to the public. Indeed, there is absolutely no authority in this circuit to prevent such knowledge from being made publicly known.

MERRITT, Circuit Judge, dissents from failure to en banc but does not join all of Judge Keith's reasons.

BOGGS, Circuit Judge, separate statement on denial of rehearing en banc.

I write separately to make two points. First, despite the implication in the separate writing of a member of the panel, the fact that a panel member who is not an active member of the court (regardless of whether that panel member is a senior judge of our court, a senior judge of another court, or a district judge) is unable to vote on a petition for rehearing en banc is *not* due to a local rule of our court. That result is commanded by 28 U.S.C. § 46(c), which states that a rehearing en banc shall be granted on the vote of the majority of "the circuit judges of the circuit who are in regular active service." Federal Rule of Appellate Procedure 35(a), in conformity with the statute as the Advisory Committee notes declare, states: "A majority of the circuit judges who are in regular active service may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc."

Our local rule does no more than follow these commands. Were it not to exist, the result would be the same, and were it to command to the contrary, by allowing anyone else in the world other than active members of the court to have their votes counted in determining whether a petition should be granted, it would be invalid as contravening the statute.

Second, I write to note, with regret, the breach of the long-standing custom of this court that actions by a member of the court with respect to petitions for rehearing of en banc are matters of internal court procedure and are not made public by other judges. Upon my perusal of the standard databases, the only instances that I was able to observe of any such information being divulged were when some controversy arose as to the mechanics of a vote on a petition for rehearing en banc and how that vote should be calculated. *See, e.g., Leaman v. Ohio Dep't of Mental Retardation & Development Disabilities,* 825 F.2d 946 (6th Cir.1987). Excepting such controversies, this court has adhered to its custom of nondisclosure in petitions for rehearing en banc just as it has treated votes to affirm by an equally divided court

as an internal court matter, and just as the Supreme Court only by custom has never publicized the votes of judges on a petition for certiorari.

It is, of course, the privilege of each judge who does take a position on a petition for rehearing or rehearing en banc to make reference to that judge's own position, by filing a statement concurring in or dissenting from the ultimate result, although this happens rarely. A diligent reader is free to make the assumption (which may or may not be correct) that all those who have not gone on record as favoring a rehearing in fact opposed it. If the number of those favoring a rehearing is one less than the number required for a majority of active members of the court (as, for example, in *Coles v. Cleveland Board of Education*, 183 F.3d 538 (6th Cir.1999)), the assumption has the force of mathematical logic.

However, exactly because the treatment of a petition for rehearing en banc does not generally come with the expectation or obligation to state reasons, contrary to the situation with an opinion of the court, it is regrettable that a writer has chosen to make assertions with respect to such matters. And, since a court speaks only through its orders, *see Goldman v. C.I.R.*, 388 F.2d 476, 478 (6th Cir.1967) (Peck, McCree and Combs, JJ); cf. *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank, Detroit*, 943 F.2d 52 (table), 1991 WL 170904, at *3 (6th Cir.1991) (Keith, Boggs and Norris, JJ), our court, of course, makes no warranties as to the accuracy of the assertions made in statements by judges (including, of course, this one).

In this regard, it may be instructive to review, based on our court's rules and procedures and long-standing practice, the varieties of ways in which each member of the court has the opportunity to act on a petition for rehearing en banc, all of which matters have been, up to now, treated as matters internal to the court, just as much as the discussions at conference.

1. Any member of the court may ask for a response to a petition for rehearing en banc, which response is requested by the clerk in the name of the court.

2. If no request for a vote is received, the petition for rehearing en banc is automatically denied, by a form order stating that after circulation "to all ... active judges," "no judge of this court [has] requested a vote," which could perhaps be taken as declaring that each member of the court voted to deny the petition.

3. According to Sixth Circuit IOP 35(c), any active member of the court, or member of the original panel, may request a poll of the entire court, though the name of the requestor has never been publically announced.

4. Consistent with 28 U.S.C. § 46(c), and implemented by IOP 35(c), a voting ballot is distributed to each member of the court in regular active service. If a majority of the members in regular active service do not support such a petition, it is denied by a form order stating that "less than a majority of the judges ... favored the suggestion" supported the petition, as was indeed the case with the current petition.

5. Members are not required to take any affirmative action to vote on a petition (contrary to the situation for decisions on cases), but by necessary implication of the logic of 28 U.S.C. § 46(c), any failure to vote has the effect of opposing the petition.

Each of the actions at each step of the process—asking for a response, asking for a vote, voting for, voting against, or not voting on a petition—may be taken for any of a large variety of reasons, and such actions have never been thought subject to public explanation, unless a judge chooses to do so with respect to that judge's own position.

In my 13 years on the court, I have been presented with about 3000 petitions for rehearing en banc. With respect to each I took some action that had legal effect, even

if that action was simply to do nothing. In about 200 cases, some member of the court asked for a poll on the petition and, again, I took some action that had legal effect: I voted yes, no, or did not vote. With variations in the numbers involved, the above is true for every active and senior member of this court.

Over those 13 years, and for time before that in which "the memory of man runneth not to the contrary," no indication of such matters has been released by official court document, and no individual judge has chosen to make assertions about his colleagues' actions.

Until now, those customs have never been characterized by anyone as "compromising the public interest," "reprehensible practices of secrecy and concealment," denying "information of such vital public concern" or any of the other colorful phrases by which the writer refers to them in his statement.

There may be a legitimate argument as to what the court's practices should be. Indeed, the Fourth Circuit, though it appears to stand alone in that regard, declares by rule that votes on a petition en banc should be made public. See 4th Cir. Rule 35(b). A number of other circuits by rule explicitly indicate the procedures to be followed, all of which provide for the publication of votes on rehearing petitions only by the choice of individual judges with regard to their own actions. *See, e.g.* D.C.Cir.I.O.P. XIII,B.2; 7th Cir.I.O.P. 5(e); 9th Cir.Rule 35–3, note 4; Fed.Cir. I.O.P. 14.1(f), 14.2(f).

Insofar as can be determined from a search of data bases, all other circuits by practice do not reveal such votes. A legitimate case can be made that we should change our practice, which can be done by adopting a local rule or Internal Operating Procedure to that effect.

However, I continue to find it regrettable that a judge, whose access to the relevant information arises only by the same custom of the court, as he is not a member of the voting body, chose to make assertions with respect to such information.

Finally, since the assertions as to what "spurred [my] concern" to write on this matter are unwarranted and unprofessional, it need not be added that they are untrue as well.

BATCHELDER, Circuit Judge, separate statement on denial of rehearing en banc, in which Ryan, Circuit Judge, joined.

· I agree entirely with Judge Boggs's separate statement on denial of rehearing en banc in this case. I write separately because I believe some additional points must be made with regard to the dissent to the original panel's denial of rehearing, because the substance of that dissent deals entirely with the full court's denial of rehearing en banc.

First, as Judge Boggs has capably explained, under the provisions of 28 U.S.C. § 46(c), Federal Rule of Appellate Procedure 35(a) (Advisory Committee note), and the rules of the United States Court of Appeals for the Sixth Circuit, senior judges are not entitled to vote on petitions for rehearing en banc. Our dissenting colleague, having elected to take senior status, was therefore not entitled to vote and did not vote on the question of whether to rehear this case en banc. It follows, then, that he would lack standing to write in dissent from the court's decision not to rehear it. There is no doubt that he has every right to dissent from the original panel's denial of rehearing; it is regrettable that he has chosen to thus clothe what is in fact the dissent which he does not have standing to write.

Second, it is regrettable that our colleague has elected to use the court as a forum to express his personal views about the desirability of striking down the Tennessee Parental Consent for Abortions by Minors Act, and in so doing to flout the spirit of the statute and the long-standing customs and procedures of the court; even

more regrettable is that he has chosen to augment the expression of those views with an ad hominem attack on specifically named members of this court. Our dissenting colleague has pronounced judgment on the characters of those on the court who, he thinks, disagree with him: the majority members of the original panel—who expressed a view of the law contrary to his—and those of us who did not vote to hear the case en banc, have, he asserts, violated our solemn oath "to uphold the law." (In fact, by that oath, each of us undertook to "faithfully and impartially discharge and perform the duties incumbent upon me ... under the Constitution and laws of the United States. So help me God.") And Judge Boggs, in writing to explain the traditions of this court with regard to the en banc procedures, was, our colleague says, "spurred by his concern that his position on the abortion issue not be made known to the public."

If collegiality is necessary to the functioning of the court, and this court has certainly taken the position over many years that it is, how are we to maintain it if we permit our disagreements over the law to take the form of personal attacks on character? Whatever the motivation of any member of this court in making any particular decision, from whence does any other member derive the authority to judge that motivation? And at what cost to the work of the court are those judgments made? Our dissenting colleague's own purposes may be furthered by publicly impugning the integrity of his colleagues. Collegiality, cooperation and the court's decision-making process clearly are not. And public confidence in the judicial system and in this court clearly are not.

Finally, I would note that, our dissenting colleague to the contrary notwithstanding, it is just possible that in any given case, the written word may be susceptible to more than one interpretation. Ironically, the dissent's own words urging the plaintiffs to persist in their efforts to overturn the Tennessee statute prove the point:

"[i]t is only through perseverance in what appears to be adversity that ... the *smallest voice is heard.*" Indeed.

CLAY, Circuit Judge, agrees with Judge Keith's comments.