**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carlos BORDAYO, Defendant–**
**Appellant.**

**No. 01–2169.**

United States Court of Appeals,
Sixth Circuit.

Feb. 18, 2003.

Before GILMAN and GIBBONS,
Circuit Judges;  and POLSTER, District

Judge.*

## OPINION

POLSTER, District Judge.

Defendant–Appellant Carlos Bordayo pled guilty to one count of conspiracy to import marijuana under 21 U.S.C. § 846 and one count of money laundering under 18 U.S.C. § 1956, and was sentenced on December 14, 1992 to sixty-six months in prison to be followed by five years of supervised release. Bordayo began his term of supervised release on September 17, 1997 and subsequently violated its conditions on three occasions, all based on positive drug tests. After Bordayo's latest revocation hearing, the district court revoked supervised release and sentenced Bordayo to eighteen months in prison with a recommendation to the Bureau of Prisons that Bordayo participate in an intensive 500–hour substance abuse treatment program. The sentence further provided that if Bordayo successfully completed the program, no additional period of supervised release would be imposed. However, if he did not, Bordayo would be required to serve a twenty-four month term of supervised release following his prison sentence. Bordayo, who did not object to this sentence after being given an opportunity to do so, now appeals the sentence because of the conditional nature of the supervised release term. For the reasons set forth below, the district court's sentence is AFFIRMED.

## I. Background

On April 9, 1992, Carlos Bordayo was indicted in the Western District of Michigan, along with numerous others, on federal drug-trafficking conspiracy and money laundering charges covering a period from 1986 through and including April 7, 1992.

On December 14, 1992, after pleading guilty to one count of conspiracy to import marijuana and one count of money laundering. Bordayo was sentenced to sixty-six months' imprisonment, followed by five years of supervised release. One of the conditions of supervised release prohibited Bordayo from using alcohol or unlawful controlled substances and required him to undergo drug substance abuse treatment and testing. Bordayo was released from prison and placed on supervised release on September 17, 1997.

Bordayo's supervised release was revoked on December 17, 1998, based on his use of cocaine in September 1998. At the conclusion of the revocation hearing, Bordayo was sentenced to five months in prison followed by forty-three months of supervised release with the same provisions regarding substance abuse, treatment and testing. Bordayo completed his five-month sentence on June 18, 1999, at which time his forty-three month term of supervised release commenced.

On January 18, 2000, Bordayo appeared before the district court for a second revocation hearing, based on his admitted use of cocaine in October 1999 and his failure to participate in a treatment program. This time, the district court revoked supervised release and sentenced Bordayo to eleven months' imprisonment followed by two years of supervised release with the same conditions. After completing the prison sentence, presumably in December 2000. Bordayo commenced his two-year term of supervised release.

In May 2001, after having admitted using heroin. Bordayo tested positive for morphine. The government filed a petition to revoke his supervised release in July 2001. At the revocation hearing, the

---

* The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

district court[1] engaged Bordayo and his attorney in a colloquy during which the court expressed concern for Bordayo's inability to overcome his drug habit:

> THE COURT: It appears to me that the drug counseling that Mr. Bordayo has received up to now the various times that he's been in jail simply are not working. At his age it strikes me we are getting to the end of the road here as far as the possibility of Mr. Bordayo giving up drugs, but I'm inclined to make at least one more try, this case now having been transferred to me.
>
> If I revoke his supervised release and I sentence him to a custodial period of 18 months, he will qualify for the Bureau of Prisons' 500–hour intensive substance abuse treatment program, which seems to me is much better than anything he's gotten up to this point. If he participates in that program, which is voluntary, and if he successfully completes it, then I would be inclined to not reimpose a period of supervised release. However, if Mr. Bordayo decides he doesn't want to participate in this program, that will indicate to me he's not serious about giving up heroin and that he needs to have the Probation Department continue to watch him, in which case I would intend to reimpose a period of supervised release, so it would really be, then, in his control, so to speak, whether he went back on supervised release or not.
>
> Now, are there any reasons that you wish to give me or arguments you wish to make why that, in your judgment, would not be an appropriate sentence to try to give Mr. Bordayo one last attempt at getting help here?

After conferring with his counsel, Bordayo responded to the district court's question:

> A ... I believe it's all up to the individual, sir. I mean, no matter how many classes you take, no matter how much counseling you attend, nothing's going to work until you decide you've had enough and you no longer want, you know, want to continue doing drugs. I know I've been going through counseling and different classes for the last close to 25 years, and my drug use is not a constant thing. It's something that happens sporadically. I work all the time. I feel that, like I mentioned, if I'm going to quit, I'm going to do it on my own.
>
> Q Well, you've already been revoked twice. Aren't you getting tired of being sent back to jail?
>
> A Yes.
>
> Q I'm just curious why you would not at some point along the way here develop the desire to actually give up drugs.
>
> A Well, that's been a process that I've been working on, and like I said, it's not something I do all the time. It's just something that happens once in a great while, and this time it's happened when I've been on supervised release, but I don't go out and do drugs every day.
>
> Q You've never made it past about six months after you got out of jail without testing positive, have you?
>
> A About a year.
>
> Q You made it a year one time?
>
> A Yes.
>
> Q Which time was that?
>
> A I think the first when I got out in '97.
>
> Q What month did you get out?
>
> A August the 20th of '97.
>
> Q Well, you were revoked on December 17th of '98, so sounds like it was about a year.

1. Bordayo's case was initially assigned to Chief District Judge Richard Alan Enslen, and was later transferred to District Judge David W. McKeague.

656

Are you telling me that you don't have the desire to give up drugs when you explain to me that you—

A Yes, I have that desire.

Q Do you have some reason -

A What I'm saying is this desire does not come from counseling or, you know, it's something that has to come from within. I know that drugs are bad for a person, and just because—you know, I've always known this. I've always known what I'm doing wrong, but I still—I still did it.

Q I'm sorry, you what?

A I still did it. I knew I was doing wrong but I still did it.

Q Have you talked to people that have participated in the Bureau of Prisons' 500–hour program?

A Yes.

Q Do you have any opinions about that program, standing here today?

A Well, it's—I know the majority of them did it to get a time cut, and some of them it had helped, some of them it didn't, so it's all up to the individual.

Q That's probably a pretty fair assessment. Anything else that you want to tell me?

A No, sir.

Thereafter, on August 8, 2001, the district court issued a judgment entry revoking supervised release and sentencing Bordayo to eighteen months' imprisonment, with a recommendation that he participate in the Bureau of Prisons' 500–hour substance abuse treatment program. With respect to any new period of supervised release, the judgment entry stated:

Upon release from imprisonment, supervised release will not be reimposed, provided that the defendant completes the 500 hour residential substance abuse treatment program while incarcerated. If the defendant fails to complete the treatment program, then supervised release shall be reimposed for a period of twenty-four (24) months and all conditions of supervised release imposed under this court's previous judgment shall be reimposed.

This timely appeal followed.

## II. Standard of Review

Generally, we review a district court's sentence upon revocation of supervised release for abuse of discretion. *United States v. Washington,* 147 F.3d 490, 491 (6th Cir.), *cert. denied,* 525 U.S. 954, 119 S.Ct. 386, 142 L.Ed.2d 319 (1998). However, where, as here, the district court has offered the defendant the opportunity to object to the sentence and the defendant has failed to do so, we review for plain error only. *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *United States v. Leachman,* 309 F.3d 377, 380 (6th Cir.2002).

To show plain error, defendant-appellant must show that there is (1) an error (2) that is plain and (3) substantially affects his rights. *Leachman,* 309 F.3d at 386 (citing *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). If all three conditions are met, we may exercise the discretion to correct the forfeited error if we determine that the error seriously affected the fairness, integrity or public reputation of the district court proceedings. *Olano,* 507 U.S. at 732, 113 S.Ct. 1770; *United States v. Cleaves,* 299 F.3d 564, 568 (6th Cir.2002).

Thus, defendant-appellant must first show an error of law. In order to show that the error is plain, he must show that the rule allegedly violated is clear at the time of appellate review, *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and that its infraction is obvious. *Id.* at 467, 117 S.Ct. 1544. To show that the plain error affects defendant-appellant's substantial rights, he must show that the error was prejudicial.

*Olano,* 507 U.S. at 734, 113 S.Ct. 1770. In other words, the error "must have affected the outcome of the district court proceedings." *Id.* The third "substantial rights" question may be avoided if we find that the error did not affect the fairness, integrity or public reputation of the judicial proceedings. *See, e.g., Cleaves,* 299 F.3d at 569 n. 3; *United States v. Mazzo,* 48 Fed. Appx. 120 (6th Cir.2002). Because Bordayo cannot show that the district court committed an error of law, his appeal fails.

### III. Analysis

■ Defendant–Appellant Bordayo does not challenge the district court's authority to revoke supervised release and reincarcerate him or the length of his reincarceration, the district court's authority to recommend substance abuse treatment while incarcerated, or the district court's authority to impose another term of supervised release or the length of that term. Indeed, he concedes that the district court had the authority to impose an additional period of supervised release. Bordayo only challenges the district court's authority to impose a *conditional* term of supervised release.

### A.

Bordayo first argues that the district court does not have the authority to impose a conditional sentence "because a district court does not have authority simply to 'resentence' a defendant at any time, because the district court loses jurisdiction to correct or modify a sentence after the 10–day appeal period has expired." In support, he cites *United States v. Martin,* 913 F.2d 1172 (6th Cir.1990), and *United States v. Strozier,* 940 F.2d 985 (6th Cir. 1991).

In *Martin,* the district court announced at the defendant's initial sentencing hearing that it was going to impose a dual-track sentence (one reflecting application of the federal sentencing guidelines and one reflecting pre-guidelines case law) on the basis that the constitutionality of the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–98 (the "Act"), under which the guidelines were promulgated, was then pending before the Supreme Court. However, the district court inadvertently issued a final sentencing order imposing only the sentence reflecting pre-guidelines case law. Months later, after the Supreme Court upheld the Act in *United States v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the district court *sua sponte* issued a *nunc pro tunc* entry of judgment reflecting the application of the guidelines, which judgment entry increased the defendant's sentence. The Sixth Circuit reversed, holding that, absent a timely appeal from the final entry of judgment and conviction, the district court lacked jurisdiction to *sua sponte* change its own sentence. *Martin* is distinguishable from the instant case because the legal issue presented in *Martin* was whether the district court had jurisdiction to issue *sua sponte,* after the time for appealing the initial sentence expired, a second, longer sentence.

Bordayo also cites *United States v. Strozier,* 940 F.2d 985 (6th Cir.1991), in support of this argument. In *Strozier,* the district court issued a *sua sponte* order amending its initial sentencing order one week after the initial order had been filed. The amended order added a term of supervised release that was mandated by the guidelines. Strozier appealed, arguing that the district court lacked authority to amend its own order in this manner. The Sixth Circuit disagreed, holding that a district court has the authority to amend a sentence if it does so within the time for appeal and amends the sentence to conform it to the mandatory provisions of the guidelines. *Strozier* is distinguishable from the instant case because *Strozier* ad-

dresses only the authority of a sentencing court to correct its own sentence.

Bordayo's premise that his conditional sentence is tantamount to resentencing after the ten-day appeal period has expired is flawed, since his sentence is precise and unequivocal, and there is no need for the district court to revisit it—by way of amendment or other order—in the future. Because Bordayo's sentence does not violate the rulings set forth in *Martin* and *Strozier*, he cannot establish plain error.

### B.

■ Bordayo next argues that there are only a limited number of places available in the 500–hour treatment program, and neither a recommendation from the court nor an application from a prisoner guarantees placement. According to his brief, "On information and belief, Defendant did in fact apply to participate in the 500 hour program but was rejected because he did not have sufficient time remaining on his sentence." Notably, Bordayo does *not* argue that the intensive program cannot be completed in eighteen months or, given his asserted reluctance to enter the program, that he applied for the program shortly after he began his prison sentence. Nonetheless. Bordayo contends that a conditional sentence that depends on factors beyond a defendant's conduct, acts or power to control, is improper. In support, he cites *Martin*, 913 F.2d 1172, and *United States v. Rose*, 881 F.2d 386 (7th Cir.1989).

Citation to *Martin* is unavailing. The *Martin* decision is expressly fact specific. 913 F.2d at 1175 ("there exists no current or historical statutory or judicial precedent to support a legal theory of 'conditional sentencing' that could or would have, *under facts similar to those of the instant case*, perpetuated the jurisdiction of the trial court beyond October 24, 1988, the date upon which its first judgment of conviction and commitment became final."

(emphasis added)). Moreover, in *Martin,* we declined to address the efficacy of dual-track sentencing. *Id.* at n. 4.

Bordayo's reference to the Seventh Circuit's decision in *Rose* is misplaced. The defendant in *Rose* challenged the constitutionality of the statutory provision under which he was sentenced and the sentence was affirmed. It has no relationship to Bordayo's case whatsoever.

The government argues that *United States v. Brown,* 224 F.3d 1237 (11th Cir. 2000), supports Bordayo's sentence. In *Brown,* following revocation of supervised release, the district court imposed a term of imprisonment, the length of which was conditional on the availability of the same substance abuse program recommended in the instant case:

> I am going to impose the twenty-four month sentence in the Bureau of Prisons and recommended that you be housed in an institution where the Comprehensive Substance Abuse Treatment Program is available. The Probation office is [sic] use their best efforts to get you designated. If for any reason you are not designated, I direct the Bureau of Prisons [sic] amend your sentence to reflect a sentence at the maximum of the Chapter 7 guideline range of eleven months.

224 F.3d at 1239. The defendant appealed this sentence, arguing that the district court abused its discretion by exceeding Chapter 7 of the sentencing guidelines for the purpose of permitting rehabilitation. The Eleventh Circuit affirmed the conditional sentence. In so ruling, the *Brown* court found that the relevant statutes expressly require the district court to consider medical or other rehabilitative needs when imposing a term of incarceration following revocation of supervised release. 224 F.3d at 1240–42 (citing 18 U.S.C. §§ 3583(e) and 3553(a)(1–6)). The *Brown* court also found that, while a district court

must consider the policy statements of Chapter 7 of the sentencing guidelines in fashioning an appropriate sentence for revocation of supervised release, it is not bound by them. 224 F.3d at 1242–43 (citing *United States v. Milano,* 32 F.3d 1499, 1502–03 (11th Cir.1994); *United States v. Thompson,* 976 F.2d 1380, 1381 (11th Cir. 1992)). The *Brown* court concluded that, since the district court considered both the relevant recommended prison term of Chapter 7 as well as Brown's rehabilitative needs in crafting the sentence, it did not abuse its discretion. While the defendant in *Brown* did not challenge the conditional nature of his sentence, the conditional nature was apparent and could have been raised by the Eleventh Circuit but was not. Although *Brown* does not issue from the Sixth Circuit, it is more factually analagous to the instant case than any of this circuit's cases cited by Bordayo.

Here, Bordayo expressed an unwillingness to seek treatment while incarcerated. The district court was concerned that, without treatment, Bordayo was a danger to himself and the community. As Bordayo himself concedes, it was proper for the district court to impose an additional term of supervised release following his reincarceration. Such a sentence reflects the policies recently articulated by the United States Supreme Court in *Johnson v. United States,* 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000):

> The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty. *See, e.g., United States v. Johnson, ante,* at 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 ("Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration"). The Senate Report was quite explicit about this, stating that the goal of supervised release is "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S.Rep. No. 98–225, p. 124 (1983).
>
> Prisoners may, of course, vary in the degree of help needed for successful reintegration. Supervised release departed from the parole system it replaced by giving district courts the freedom to provide postrelease supervision for those, and only those, who needed it. *See id.,* at 125 ("In effect, the term of supervised release provided by the bill takes the place of parole supervision under current law. Unlike current law, however, probation officers will only be supervising those releasees from prison who actually need supervision, and every releasee who does need supervision will receive it"). Congress aimed, then, to use the district courts' discretionary judgment to allocate supervision to those releasees who needed it most. But forbidding the reimposition of supervised release after revocation and reimprisonment would be fundamentally contrary to that scheme. A violation of the terms of supervised release tends to confirm the judgment that help was necessary, and if any prisoner might profit from the decompression stage of supervised release, no prisoner needs it more than one who has already tried liberty and failed. He is the problem case among problem cases, and a Congress asserting that "every releasee who does need supervision will receive it," *ibid.,* seems very unlikely to have meant to compel the courts to wash their hands of the worst cases at the end of reimprisonment.

*Id.* at 708–710, 120 S.Ct. 1795. Given the discretionary role Congress conferred on district courts in imposing sentences following revocation of supervised release and this particular sentencing court's reasoned decision, we might affirm Bordayo's sentence under an abuse of discretion standard, if it were applicable. Under the plain-error standard of review, which does apply, Bordayo has cited no case law, clear or otherwise, that the district court violated in imposing its sentence. District Judge McKeague, who had not dealt previously with Bordayo, used supervised release in a creative way to try to assist Bordayo. Even if it was beyond Bordayo's control whether or not he completed the 500–hour program, the only negative consequence would arise should Bordayo not complete the 500–hour program and then resume his drug abuse while on supervised release, thereby risking yet another prison sentence. Should this occur. Bordayo will have only himself to blame.

Accordingly, we AFFIRM Bordayo's sentence.