**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  09a0163n.06
Filed:  February 25, 2009

07-3375

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON  APPEAL  FROM  THE  UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MOISES GARCIA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  DAUGHTREY, CLAY, and McKEAGUE, Circuit Judges.

**PER CURIAM.**   In this sentencing appeal, the government challenges the district court's jurisdiction to reduce the defendant's original sentence in an order entered beyond the seven-day time limit set by 18 U.S.C. § 3582 and Federal Rule of Criminal Procedure 35 for modification of a sentence, contending that the order must be vacated and the original sentence reinstated.  The defendant argues in response that the government has waived any objection to the question of jurisdiction under Rule 35 and that, because the district court imposed only a conditional sentence at his sentencing hearing, the later order reducing his sentence was an appropriate adjustment once he had met the condition set by the district court.  We conclude that procedural deficiencies in the sentencing process caused by virtually everyone concerned – the parties, their counsel, the court, and even

the court clerk – require us to vacate the defendant's sentence and remand the matter for re-sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

The procedural snarl in this case undoubtedly had its genesis in the defendant's rejection of a plea agreement proposed by the government, apparently at the advice of his attorney, who was concerned that the provision in the agreement requiring a waiver of the defendant's right to appeal would compromise Garcia's rights under the much-anticipated outcome in the *Booker* case, then pending before the United States Supreme Court. *See United States v. Booker*, 543 U.S. 220 (2005). As a result, Garcia pleaded guilty to two offenses – participation in a conspiracy to distribute cocaine and distribution of cocaine – without the benefit of a plea agreement, thereby ostensibly forfeiting the possibility of a two-level reduction of his base offense level in exchange for his commitment to pursue voluntary removal to his home country of Mexico at the completion of his prison term. Ironically, by the date of the defendant's sentencing hearing on June 17, 2005, *Booker* had been decided, making the applicable sentencing guidelines no longer mandatory. However, the government refused to revive the original offer regarding Garcia's eventual deportation.

Counsel for Garcia nevertheless asked the district court to grant the two-level reduction in the defendant's offense level, based on his client's willingness to submit to voluntary removal to Mexico directly from prison. The government adamantly opposed the

request, arguing that Garcia should not be allowed this benefit in the absence of "concessions" that would have been required had the original plea agreement been executed. The government further insisted that because Garcia had not filed the proper paperwork waiving his right to challenge deportation, if the court granted the reduction, it would be permitting the departure based on an "empty promise" that the defendant could later recant without any consequence.

The district judge was apparently unimpressed with the government's argument regarding the lack of concession on the defendant's part, but was also unwilling to grant the reduction in the absence of a written waiver. As a result, the district judge calculated the applicable guidelines range without the two-level reduction and announced that "if [the defendant] can provide [the proper paperwork], then I will include two points [in reduction] for that. If he can't provide it, then I will not include those two points." The judge gave Garcia until June 30, 2005, approximately two weeks after the June 17 hearing, to execute and submit copies of the proper voluntary-departure documentation, indicating that the judgment and commitment order would not be issued until then. The judge also indicated that if and when the two-level reduction was applied, the relevant guideline range would be 63 to 78 months, down from a range of 78 to 97 months without the two-level reduction. Although the government continued to object to the proposed departure, the prosecution did not object specifically to the court's decision to structure the sentence in this alternative manner, either on jurisdictional or any other grounds.

The district court then imposed a sentence of 78 months, which was at the bottom of the advisory guideline-sentencing range as calculated without the two-level reduction. The judge explained that she was sentencing at the lowest end of the range because similar sentences had been recommended for the other defendants involved in the conspiracy, but she failed to offer any further rationale for the sentence in terms of the 18 U.S.C. § 3553(a) factors. Although the judge clearly indicated that the sentence just pronounced was subject to a "two point reduction" if the proper paperwork was submitted by the end of the month, she did not specify where in the resulting range of 63-78 months the alternative sentence would fall in that event.

Three days after the hearing, on June 20, 2005, the minutes of the sentencing hearing were entered on the docket, providing in relevant part:

> Defendant sentenced to 78 months as to count one . . . . The court is willing to amend the J&C if a subsequent statement is filed on consent that the defendant has complied with the deportation paperwork, at that time the Judgment will be amended to reflect a two point reduction in the offense level; creating a guideline of 63-78 months. To be submitted on or before 6-30-05.

Despite the district judge's statement at the sentencing hearing indicating that judgment would not be officially entered in the case until June 30, 2005, the judgment order was actually entered on June 21, 2005 – obviously in error – sentencing the defendant to 78 months, with no indication that the sentence was conditional in any respect.

Three days after the judgment was entered, on June 24, 2005, the government filed a motion opposing any further sentencing reduction. In that motion, the government acknowledged that the defendant had turned in the appropriate immigration paperwork, but indicated that it still opposed the two-level reduction because "the Government received no consideration in the form of an executed plea agreement."

On June 30, 2005, the deadline given by the district court for submitting the proper paperwork, the defendant submitted a response to the government's motion, arguing that the government "should not be permitted to frustrate the express intent of the Court by arbitrarily refusing to execute the relevant deportation documents Defendant has tendered to the government in good faith," and attaching a copy of the documentation he had submitted. In this pleading, the defendant also "request[ed] that the Court grant the reduction for the reasons stated herein, and as the Court proposed at the sentencing hearing on June 17, 2005, sentence the Defendant to a term of sixty-three (63) months rather than seventy-eight (78) months."

Approximately 19 months later,[1] on January 26, 2007, the district court issued an order "den[ying] the Government's motion [of June 24, 2005], order[ing] a two (2) level downward departure in Garcia's offense level, and amend[ing] Garcia's sentence to a term of 63 months imprisonment." The court went on to state in relevant part:

---

[1] Although the reason for the delay is not clear from the record, there is a suggestion that the district judge was ill during this period.

As Garcia has now waived any right to challenge his deportation, pursuant to U.S.S.G. § § 5K2.0 and 18 U.S.C. §§ 3553(a)(6), (b)(1), the court hereby grants an additional two point downward departure, resulting in a net offense level of 26 points. The court finds that the value of the right to challenge deportation that Garcia is surrendering is sufficient to justify a two point downward departure under 18 U.S.C. § 3553(b)(1) and U.S.S.G. § § 5K2.0. The court also finds that because Juan Herrera [a co-defendant] received precisely the same downward departure for giving up precisely the same rights Garcia now waives, 18 U.S.C. § 3553(a)(6)'s command to treat similarly situated defendants similarly also justifies the two point downward departure.

Combining Garcia's new base offense level of 26 points with his criminal history category I leaves a guidelines range of 63 to 78 months imprisonment. The court therefore sentences Garcia to a term of 63 months imprisonment, and accordingly amends the June 21, 2005 judgment and commitment.

A new judgment and commitment order was never entered, but the government now appeals the January 2007 order reducing Garcia's sentence to 63 months.

## DISCUSSION

The government contends that the district court's order reducing Garcia's sentence from 78 to 63 months violated 18 U.S.C. § 3582(c), which, in pertinent part, incorporates the limitations on sentence modification set out in Federal Rule of Criminal Procedure 35.[2] According to the government's argument, this alleged statutory violation left the district court without jurisdiction to modify Garcia's sentence in January 2007. Consequently, the

---

[2]Rule 35, in turn, governs when and why a district court may correct an error in a sentencing order.

government asks us to vacate the order reducing the defendant's sentence to 63 months and remand with instructions to reinstate the 78-month sentence imposed in June 2005.

Garcia argues in response that the district court initially assessed a "conditional" or "alternative" sentence and that the order now on appeal simply imposes the sentence actually contemplated by the district court, rather than correcting an error or otherwise modifying the sentence under Rule 35. Garcia therefore asks that we uphold the 63-month sentence.

In fact, the record does suggest that at the defendant's sentencing hearing, the district court intended to impose what amounted to an alternative or conditional sentence, *i.e.,* a 78-month sentence *if* the defendant did not turn in the proper paperwork and another, lower, sentence *if* he did. It is also clear, however, that the district court failed to specify what that alternative sentence would be, instead setting out merely what guideline range would apply. Only much later did the district court enter an order that set the sentence, finally, at 63 months – the lowest possible sentence available under the newly-applicable guideline range, discussing some, but certainly not all, of the factors mandated by § 3553(a). That omission was but one of several procedural irregularities associated with the entry of the final sentencing order.

**Jurisdiction under Rule 35**

Pursuant to 18 U.S.C. § 3582, a district court "may not modify a term of imprisonment once it has been imposed" except in certain limited circumstances, including

the only one arguably relevant to this case: "to the extent otherwise expressly permitted . . . by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B). That rule provides, in pertinent part, that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical or other clear error." Fed. R. Crim. P. 35(a). Rule 35 also defines "sentencing" as "the oral announcement of the sentence." Fed. R. Crim. P. 35(c). In this case, the government contends that the district court's final order, filed 19 months after the defendant's sentencing hearing, "modified a term of imprisonment once it ha[d] been imposed." Therefore, the government argues, the district court had no jurisdiction to enter the modification beyond Rule 35's seven-day limit, and the attempt at modification had no effect and should be vacated.

In its recent opinions in *Kontrick v. Ryan*, 540 U.S. 443 (2004), *Eberhart v. United States*, 546 U.S. 12 (2005), and *Arbaugh v. Y & H Corporation*, 546 U.S. 500 (2006), the Supreme Court expounded upon the difference between time limitations that are properly characterized as subject-matter limitations and those that in the past had been mistakenly referred to as "jurisdictional" but were actually inflexible, but waivable, claims-processing rules. In the wake of these opinions, there was some confusion about the category into which Rule 35 should fall. *See United States v. Sterling*, No. 06-6081, 2007 WL 962849, at * 2 (10th Cir. Apr. 2, 2007) ("*Eberhart v. United States* calls into doubt the jurisdictional nature of Rule 35(a)'s time limits."); *but see United States v. Vicol*, 460 F.3d 693, 694 (6th Cir. 2006) (treating Rule 35(a) as a "jurisdictional limitation[ ]" without explicitly discussing *Eberhart*). However, in its most recent decision on the issue, *Bowles v. Russell*, ___ U.S.

___, 127 S.Ct. 2360 (2007), a majority of the Supreme Court (over a fervent dissent) held that the key difference between the two categories was whether the time limit at issue was statutorily fixed. *See id.*, 127 S.Ct. at 2364 n.2 (explaining the "jurisdictional significance of the fact that a time limitation is set forth in a statute").

Since *Bowles* was decided, the First and Third Circuits have re-examined Rule 35 in light of its reasoning and have held that because Rule 35 is incorporated into 18 U.S.C. § 3582(c)(1)(B), its time limit is statutory and, therefore, jurisdictional. *See United States v. Higgs*, 504 F.3d 456, 464 (3d Cir. 2007); *United States v. Griffin*, 524 F.3d 71, 83-84 (1st Cir. 2008). Hence, those opinions suggest that if the January 2007 order in this case is viewed as providing a modification of Garcia's sentence under Rule 35, as the government insists, *Vicol* remains good law, and we would be required to hold that the district court lacked jurisdiction to enter that order. *See Vicol*, 460 F.3d at 694 (court must actually resentence defendant within seven days of oral pronouncement of original sentence to comply with Rule 35's time limit; vacating second sentence).

Moreover, we – along with a number of other circuits that have addressed the issue – have held that when a modified sentence is vacated on Rule 35 grounds, the original sentence is not properly before us unless it, too, was appealed and, if not, a remand for resentencing is unnecessary. *See id.* at 696-97; *United States v. Martin*, 913 F.2d 1172, 1177 (6th Cir. 1990); *Higgs*, 504 F.3d at 464; *United States v. Austin*, 217 F.3d 595, 598 (8th Cir. 2000); *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1030 (9th Cir. 1999).

In this case, of course, there was no appeal of the June 2005 sentencing order by either party.

## Conditional or Alternative Sentencing

There is no jurisdictional problem, however, if the January 2007 order is, as the defendant argues, not a Rule 35 modification but simply the entry of a conditional sentence initially imposed in June 2005 – as contemplated by the district court and both parties, neither of whom appealed any aspect of that 2005 sentence. There is, apparently, scant case law addressing conditional sentences, in this circuit or elsewhere. Both parties cite an unpublished case from this court, *United States v. Bordayo*, No. 01-2169, 2003 WL 463484 (6th Cir. Feb. 18, 2003), involving the revocation of Bordayo's supervised release and the imposition of a new term of incarceration, which was to be followed by a conditional term of supervised release. If the defendant successfully participated in a voluntary drug program while in prison, the district court pronounced, he would not need to serve an additional period of supervised release. If, however, he did not complete the program, he would be subject to an additional term of supervised release. The judgment entry noted the conditional nature of the supervised release term. Bordayo appealed, arguing that the district court did not have authority to impose a conditional sentence because it would amount to resentencing at the completion of incarceration, outside the specified time period. Reviewing for plain error, the panel rejected this argument, stating:

> Bordayo's premise that his conditional sentence is tantamount to resentencing after the ten-day appeal period has expired is flawed, since his sentence is precise and unequivocal, and there is no need for the district court to revisit it – by way of amendment or other order – in the future.

*Id.* at * 5.

The defendant points to *Bordayo* as an indication that conditional sentences are recognized in this circuit as valid and not subject to challenge on jurisdictional grounds. He posits that his sentence was indeed a conditional sentence, as shown by the oral pronouncement and the written notation on the docket, although he appears to concede that its conditional nature was not noted on the actual judgment entered – presumably in error – on June 21, 2005. The government does not contest that, in general, a district court has the power to issue a conditional or alternative sentence. Instead, it contends that in this case, Garcia's sentence cannot be a valid conditional sentence because the district court did not specify a particular alternative sentence. Hence, the argument goes, by setting out only the sentencing range that was conditionally applicable, the district court failed to impose an alternative sentence that was "precise and unequivocal," in the words of the *Bordayo* court. We note, however, that the need to state a precise term of months, now invoked by the government, was not suggested to the district court at the sentencing hearing. Nor, as we have noted previously, was a contemporaneous objection to the conditional nature of the sentence made by the government.

We conclude that the district court's flawed attempt at a conditional sentence – flawed in that it was not "precise and unequivocal" – was just one instance of the procedural problems that marked the sentencing process in this case. As a threshold matter, the unpublished decision in *Bordayo* notwithstanding, the legal validity of a conditional sentence is not a foregone conclusion, in this circuit or elsewhere.

For example, in *United States v. Martin*, 913 F.2d 1172 (6th Cir. 1990), we reviewed a "dual sentencing" procedure in which the district court imposed a conditional sentence in a situation similar to that prevailing in the run-up to *Booker*. The district court orally announced two sentences – a higher, guideline-based sentence and a lower, non-guideline-based sentence – clearly indicating to both the defendant and the government that if the validity of the guidelines were upheld, the alternative guideline-based sentence would take effect and a new judgment and commitment order would be entered at that time. However, the judgment and commitment order was drafted to reflect the non-guideline sentence only. Neither party appealed from the original judgment and commitment order. After the Supreme Court upheld the guidelines, and 134 days after entry of the judgment, the district court *sua sponte* entered a second judgment and commitment order that implemented the higher, guideline-based sentence that had been orally announced. The defendant appealed from this second judgment, and we held in a split decision that the district court lacked jurisdiction to enter its subsequent order, rejecting the argument propounded by the dissenting panel member that the second judgment was valid because the original sentence was a permissible conditional sentence. *See id.* at 1174-75. The majority held that "there exists no current or historical statutory or judicial precedent to support a legal theory of 'conditional sentencing' that could or would have, under facts similar to those of the instant case, perpetuated the jurisdiction of the trial court . . . ." *Id.* at 1175. The majority went on to explain that, to the extent conditional sentencing was acceptable, the fulfillment of the condition must rest within "the personal control of the defendant and not some independent third party or entity such as the Supreme Court . . . ." *Id.* at 1176. Moreover, the majority

- 12 -

noted that because the judgment "made no reference to the alternative sentence . . . [it] must therefore stand alone, independent of the dialogue that occurred between the parties during the sentencing hearing for the reason that courts speak only through their journal entries." *Id.* at 1175.

Garcia's case is certainly distinguishable from *Martin* insofar as the condition at issue – turning in the proper paperwork – was within the control of Garcia, rather than a third party. The more problematic aspect of the *Martin* opinion is its pronouncement that the "courts speak only through their journal entries," *id.* at 1175, which assumes that a court's judgment rather than the oral pronouncement of the sentence is controlling. In support of this contention, the *Martin* court cited several Sixth Circuit opinions, including *Chapman v. United States*, 247 F.2d 879, 881 (6th Cir. 1957), which held that

> [t]he Court speaks through its judgment . . . . If the entry is inaccurate there is a remedy by motion in a direct proceeding in the same action to correct it to the end that it may speak the truth. . . . Until corrected in a direct proceeding the Court will close its ears to the claim that the written judgment is actually not the judgment of the court.

But none of the cases cited in *Martin*, including *Chapman*, involved a conflict between the oral imposition of a sentence and the written judgment and, therefore, each is distinguishable on its facts from this case.[3]

_____

[3]Goldman v. Commissioner, 388 F.2d 476, 478 (6th Cir. 1967), involved a dispute about the "fair market value" of certain property for tax purposes and whether the Tax Court improperly relied on factually erroneous testimony. We observed that "a court speaks only through its orders" and that nothing in the Tax Court's findings of fact or legal conclusions indicated that it had improperly calculated the property's reasonable value. United States v. Eisner, 329 F.2d 410, 412 (6th Cir. 1964), involved a bond forfeiture

Moreover, insofar as the *Martin* opinion seems to hold that a court's journal entry trumps the oral announcement of the court's judgment, it overlooks the long-standing rule in this circuit that the oral pronouncement of the sentence is controlling. *See United States v. Cofield*, 233 F.3d 405, 406-07 (6th Cir. 2000) (noting the "widely accepted rule" that "if there is a discrepancy between the oral pronouncement of a criminal sentence and the written judgment, the oral sentence generally controls"); *United States v. Schultz*, 855 F.2d 1217, 1225 (6th Cir. 1988) (noting the "long line of cases that hold that when an oral sentence conflicts with the written sentence, the oral sentence controls"); *cf.* Fed. R. Crim.

_____

dispute, in which we were asked to decide whether the defendant's failure to "surrender himself" to the U.S. Marshal caused a forfeiture of his bond. We noted that "[a] court of record speaks only through its records" and that there was no evidence of any formal written court-order directing the defendant to surrender and held, therefore, that mere failure to surrender in the absence of a directive to do so did not require a forfeiture. In Chapman, 247 F.2d at 880, the defendant challenged the validity of his plea of nolo contendere, arguing that "the transcript of the proceedings at the time when the plea of nolo contendere was entered . . . [did] not show any formal or express withdrawal by him of the plea of not guilty." We held that the district court's written judgment, in dictating that the previously entered not guilty plea had been withdrawn, spoke for itself and was controlling. In Odekirk v. Ryan, 85 F.2d 313, 315 (6th Cir. 1936), a habeas case, we considered the petitioner's claim that his two state sentences should run concurrently, and we observed that nothing in the record indicated that the second sentencing court knew about the first sentence or intended to impose a concurrent sentence. We concluded that because the "court speaks through its records" and the record was silent as to the second court's knowledge or intent, the petitioner could not prevail. I.T.S. Rubber Co. v. Tee Pee Rubber Co., 295 F. 479, 482 (6th Cir. 1924), presented the question of whether an injunction issued by the district court was still in force. We held that the injunction had been vacated and was not, as the appellants argued, severable into component parts. We further observed that "[c]ourts can speak only through their records, and the record in this respect is unambiguous." At issue in Flannigan v. Consol. Rail Corp., 888 F.2d 127, 127 (6th Cir. 1989), was the trial court's supposed failure to rule on the defendant's motion for judgment notwithstanding the verdict. More specifically, the defendant claimed that the district court's opinion insufficiently addressed his JNOV motion. In dismissing this claim and affirming the district court, we noted that "a court speaks officially through its orders, not its opinions." The district court's final order clearly spoke to the JNOV motion.

- 14 -

P. 35(c) ("As used in this rule, 'sentencing' means the oral announcement of the sentence.").

Given this line of cases, it would be possible to conclude that the district court's last order, entered on January 26, 2007, was – despite its amendatory language – neither an amendment nor a modification of the original sentence but was, rather, an attempt to impose the original sentence pronounced by the court, as well as the one anticipated by the parties, given the fact that neither the government nor the defendant took steps to file a direct appeal from the earlier June 2005 judgment. However, because the district court failed to specify at the sentencing hearing what the actual alternative sentence would be, and because the court did not adequately discuss the § 3553(a) factors with regard to either sentence, we conclude that neither the original sentencing order nor the subsequent order can be upheld. *See United States v. Vicol*, 514 F.3d 559, 561 (6th Cir. 2008) ("We may hold that a district court abused its discretion if it committed one of the following 'significant procedural errors': improperly calculating the guidelines range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ."). Although the district court eventually explained, in part, its reasoning for the 63-month sentence set out in its final order, a full exposition of the § 3553(a) factors relevant to both sentences should have been provided at the sentencing hearing itself, giving the parties an opportunity to respond to the court's reasoning. As a result, we conclude that the appropriate remedy is

to vacate both of the court's sentencing orders and remand the case for a new sentencing hearing.

## CONCLUSION

For the reasons set out above, we REVERSE the judgment entered below and REMAND this case to the district court for the purpose of conducting a new sentencing hearing.